### GREELY *v.* BARTLETT.

If goods be consigned to a factor to sell, generally, and he sell them on credit, to a merchant in good standing, who becomes insolvent before the day of payment arrives,—it is the loss of the principal, and not of the factor;—and this though the factor had taken a note for the price, payable to himself.

If the principal draw on his factor before sale of the goods, and the factor, to raise funds to meet his acceptance of such bills, sell the goods of his principal on credit, and take the note of the purchaser payable to himself, which note he indorses and sells for money, and the maker becoming insolvent before its maturity, the factor pays the note to the indorsee; he may recover this money in an action against the principal.

*Assumpsit,* brought to recover the balance of an account annexed to the plaintiff's writ. A verdict was taken for the plaintiff, by consent of the defendant, subject to the opinion of the whole Court upon the facts stated in the report of the Judge who presided at the trial, which were as follows.

The plaintiff, being a ship and merchandize broker in *Portland,* on the tenth day of *March* 1819, by order of the defendant, sold one quarter part of the defendant's ship called the *Jewel.*

The sale was made to *John P. Thurston* for 1000 dollars, on a *credit of six months,*—*Thurston* to have the benefit of the insurance which had been previously ordered by the defendant to be procured on the ship by the plaintiff;—and being at that time a merchant of good credit. The sale was considered as a good sale, it being for the full value of the property sold;—and the plaintiff, in payment of the purchase-money, took *Thurston's* two several promissory notes for 500 dollars each payable to himself or order in six months after date.

The defendant's instructions to the plaintiff as to the sale of the ship were,—" *sell my part as you think proper*":—and—" *I " hope you can sell the ship after loaded. If the accounts are all " fairly settled, and her freight is good, and you can depend on the " new captain, I shall not be so anxious, but still wish to get clear of " her. Use your own judgment.*"

Previous to the sale of the ship, viz. *November* 23, 1818, the defendant drew a bill of exchange of that date on the plaintiff

for 550 dollars, payable in ninety days *after sight*, which the plaintiff accepted *December* 8, following. And on the 27th day of *November* 1818, the defendant drew another bill of that date on the plaintiff for 471 dollars and 70 cents, payable in ninety days *after sight*, which the plaintiff accepted *December* 4, following. When these bills became due, the plaintiff, having no funds of the defendant in his hands, and having received the abovementioned notes from *Thurston*, indorsed and sold them in the market; and having thus raised the necessary funds, paid and took up the bills of exchange which he had accepted. The notes were sold for 940 dollars which was their fair market value; the usual discount on such securities being one *per cent.* per month. And the defendant was afterwards heard to say that he would rather have suffered a loss of twenty per cent. than that the bills should be protested.

On the 3d day of *August* 1819, before the notes became due, *Thurston* stopped payment: in consequence of which, the plaintiff, being duly called upon as indorser of the notes, paid the amount to the holder, and took them up.

It did not appear that the plaintiff did or was to derive any benefit whatever from the entire transaction, excepting his ordinary commission as a commission-merchant of one and a quarter *per cent.* on the amount of sales of the defendant's part of the ship. It was also proved that the premium and commission paid by the plaintiff for the insurance on the ship ordered by the defendant was twenty-five dollars, with one dollar more for the policy.

The first notice which the plaintiff gave to the defendant of the sale of the ship was by letter dated *April* 3, 1819, in which, after informing the defendant that his two drafts were duly paid, he states that he had sold the defendant's quarter of the ship *for* 915 *dollars*, and thought it a good sale ;—that the accounts of the former captain of the ship were not settled ;—promises to forward the defendant's account as soon as possible ;—but *gives no notice whatever that the ship was sold on credit, nor to whom it was sold :*—nor did it appear that the plaintiff ever notified the defendant that the sale was made on credit, nor who was the purchaser till *August* 19, 1819, sixteen days after the failure of *Thurston*, and about three weeks before the notes

aforesaid became due ; at which time he wrote him a letter stating that the sale was made on credit, to *Thurston*, who had stopped payment, and whose notes he had sold to raise money to pay the defendant's drafts;—and requesting the defendant to make provision to meet those notes when they should become due.

It further appeared by an account current stated by the plaintiff between him and the defendant, and forwarded to the latter *May* 11, 1819, that the defendant was therein credited " *By sale of one fourth part ship Jewel*, $915," and no charge was therein made of the 60 dollars discount on the sale of *Thurston's* notes, or of the 25 dollars for premium and commissions for making insurance, the benefit of which was transferred with the ship to *Thurston*. So also in the same account the defendant was credited with the *nett proceeds* of a bill of exchange on *Bristol* sold by the plaintiff for the defendant's benefit, no charges being made of discount or expense of sale, or other deduction. And in the same account the defendant was charged with " *commissions on sale one fourth ship Jewel at one and one fourth per cent. twelve dollars and fifty cents.*" It was also proved by inspection of the plaintiff's books that he credited the defendant *March* 10, 1819, with " *sale one fourth ship Jewel to J. P. Thurston, at 6 mo.* 1000 *dollars*," and charged him with " *discount on sale of Thurston's notes* 60 *dollars*";—but there was no charge in said books *at that date* for the premium and commission for insurance effected on the ship ; and it farther appeared, by referring to the bill of the broker, that this bill was not paid by the plaintiff till *April* 27*th*, then following, though the insurance was made *February* 22*d*, preceding.

It also appeared that on the 3d day of *August* 1819, *Thurston* transferred all his visible property to two of his sureties to secure them, and others, of whom the plaintiff was one, against their liabilities on bonds for duties at the custom-house, and as indorsers for him on notes where they had lent him their names as friends, for his accommodation only, and expressly excluding all *business-notes*, whether due to the assignees aforesaid, or to others ; to which transfer the plaintiff was knowing and consenting ;—and from the proceeds of this property, thus transferred, the plaintiff and others had realized a dividend of *seventy-*

*two per cent.* on the amount of the sums for which they stood accountable as the friendly indorsers and sureties of *Thurston :—* the assignees, with respect to all notes taken or indorsed by them in the way of business, standing on the same footing with all other business-creditors.

Accompanying the letter of *August* 19, 1819, the plaintiff transmitted to the defendant a corrected account current; by which it appeared that the plaintiff, on the 3d day of *June*, 1819, had remitted to *Dorr*, an agent for the defendant, the balance of the account as then stated by the plaintiff.

The verdict was for the amount of *Thurston's* notes, and interest thereon from the time of making the payment.

*Emery*, for the defendant.

1. The plaintiff having assumed the demand against *Thurston* as his own, or at least become a guarantor of its payment; if a loss has arisen, he alone must bear it. The agreement made between *Thurston* and his creditors, of whom the plaintiff was one, was, that his property assigned to them should be applied to the payment of their respective demands against him " by " reason of suretyship as indorsers or joint obligors at the Cus- " tom-House, *or as sureties in any manner.*" The plaintiff had taken the notes of *Mr. Thurston*, and put them into the market with his own indorsement; thus becoming his surety for the payment of the debt ;—and having, as the case states, received at least 72 *per cent* of the general amount for which he was liable, he is indemnified for at least so much of this debt ;—or, if he is not, it is because he has neglected to bring this claim into the composition ;—the fault is his own, and the loss is justly chargeable on him only.

It is not competent for the plaintiff to avoid his liability as factor by the want of funds. Having voluntarily assumed to act, if a loss ensues, it is the loss of the factor, *Wallis v. Telfair* cited in *Smith v. Lascelles*, 2 *D. & E.* 188. *Tickell v. Short*, 2 *Ves.* 239.

2. If the plaintiff be not liable to the loss as guarantor, he is culpable to the same extent for negligence of his duty as factor.

If any respect is to be had to the principle of law laid down as to a factor, that when he has bought or sold goods pursuant

to orders, he must give notice forthwith to his principal, lest the former orders be contradicted, and so the reputation of the party suffer ;—it cannot be less necessary to advise his principal of a sale on credit. The same reason holds in both cases. *Jacob's Law Dic. tit.* " Factor." *sec.* 4. Yet here no notice whatever was given of the facts most material for the defendant to know, until more than five months after the sale. Until then, he had every reason to believe the sale to have been for cash. Had he been advised of the facts without delay, as he ought to have been, he might have sold the notes without his own liability as indorser,—or otherwise have converted them into money. *Simpson v. Swan,* 3 *Campb.* 292.

The case where a factor may compel his principal to refund money is where he has advanced cash before the sale. Here no mistake is made by the principal. He is advised of all the facts. But if after a sale on credit, and a payment by the factor, he may reclaim the money, because the sale was on credit and the vendee is become insolvent, it may be in his power to ruin the principal with impunity ;—and this too, by means of his own neglect to advise him of facts important for him to know.

This case is not harder for the plaintiff than where one authorized his servant to dispose of goods, who took them out of the ship before the duties were paid, and for this cause they were seized. The defendant resisted the owner's claim of indemnity, because he had no funds to pay the duties with,—yet he was held liable. It was said he might have sold them—obtained advances—and paid the duties :—which neglecting, the fault was his own. *Lewson v. Kirk, Cro. Jac.* 265. 1 *Comyn on Contracts* 234.

*Longfellow,* for the plaintiff.

As to the *first* point made by the defendant ;—there are no facts in the case from which an implied guaranty can be raised. Not from the plaintiff's commissions—these being only one and a quarter per cent, and not amounting to *del credere* commissions :—nor from the terms of the sale ;—for his discretion in this particular was unlimited, and was exercised with prudence and good faith :—nor from the payment of a balance of account to the defendant's agent ;—for that was the balance

of certain bills of exchange remitted by the defendant to the plaintiff long after the sale of the ship :—nor from the negotiation of the notes by the plaintiff;—because at the time of this negotiation, it had become necessary that funds should be provided to pay the defendant's drafts accepted by the plaintiff, and these notes afforded him the only means. Neither does the course of trade authorize the defendant to charge the plaintiff as guarantor. *Van Allen v. Vanderpool,* 6 *Johns.* 69. *Scott v. Suman, Willes* 458. *Goodenow v. Tyler,* 7 *Mass.* 36.

As to the *second* point, he denied the fact of negligence on the part of the plaintiff, and minutely examined the evidence in the case, contending that the defendant was duly advised of all things material to him ; and that any earlier intelligence of the failure of *Thurston* would have been fruitless, the notes wanting nearly a month of maturity when the notice of that event was forwarded. The sale, in any light, can be treated only as a sale for reimbursement of funds, or for the creation of funds to meet acceptances ;—in which case the factor, having conducted fairly, is entitled to a reimbursement, on failure of the funds, from the principal himself.

*Whitman,* in reply.

It is of the utmost consequence to the commercial world that every factor be distinct in his accounts, and early in his intelligence. There is a high degree of confidence reposed in his statements ; which renders it important that they should be always correct, distinct, and clear. He is the agent of all parties ; holding an office of the deepest trust and most delicate nature among merchants.

But the accounts of the plaintiff want this essential character of distinctness, as is apparent from inspection of the account of *May* 11. Nor was he early in his intelligence, having never advised the defendant of the name of the purchaser, the time of credit given, nor the sale of the notes. If he is to be regarded as a fair factor, we must conclude that the reason why he did not give this intelligence was because he considered the debt as his own. Here an account was settled,—the balance paid over to the defendant,—and no notice given of the sale, or even the existence, of any notes whatever. This closes the transaction,—puts all suspicions of the principal at rest,—

and leaves the loss where it ought to be, with the factor. He ought, if he intended ever to resort to the principal, to disclose to him all the material facts, that he might be vigilant, and prevent a loss.

MELLEN C. J. afterwards delivered the opinion of the Court as follows :

The plaintiff as the agent and factor of the defendant, having sold his part of the ship *Jewel* to *Thurston* on credit, and received his promissory note in payment ; and having sold the note, and indorsed it, to raise money to pay the defendant's drafts ; and having been obliged to pay the amount to the indorsee, in consequence of the failure of *Thurston* before the note became due ; in this action demands the sum thus paid, as money paid and advanced to the defendant's use. A verdict having been returned in favour of the plaintiff for that amount and interest, the defendant now moves that the verdict should be set aside and a new trial granted.

The claim of the plaintiff to reimbursement of the sum thus advanced is resisted by the defendant on two grounds.

1. Because the plaintiff has voluntarily assumed the debt which has been lost by the failure of *Thurston*, and made himself responsible.

2. If not ;—yet his conduct, as factor, has been such, and he has been guilty of such neglect in his agency with respect to the transaction, that the law renders him liable to sustain the loss himself.——If either of these propositions be supported, the defendant's motion must prevail.

The relation subsisting between principal and factor is of such a nature as necessarily to require great confidence on one part ; and great care, attention, and fidelity on the other. Without all these, it is impossible that the extensive concerns of the commercial part of the world can be managed with advantage, or even preserved from confusion. Hence the importance of continuing, in their full force, those legal principles which have been established for the protection of the rights of both parties, and of third persons who may be engaged with such factor in the transaction of commercial business.

Some of these general principles may be stated.—By the

law-merchant, a factor may sell the goods of his principal on a reasonable credit; unless he is restrained from so doing, either by his instructions, or by the usage of the trade to which the transaction relates.

A sale made under such circumstances is at the risk of the principal; and if a loss happens, he must bear it.

But he is not authorized to give credit, except to such persons as prudent people would trust with their own property.

He may receive securities in his own name, for goods sold, without subjecting himself to liability merely by so doing.

But he must deliver such securities to his principal if he demand them;—or, in case of loss, he will be answerable as for a breach of trust, though in such case the principal should pay him his usual commissions.

If through carelesness, or want of proper examination and inquiry, he give credit to a man who is insolvent; should a loss happen, he must indemnify the principal.—And if a debt be lost, by the inattention of the factor, in omitting to collect it when in his power so to do, he will be liable for it.

He must be honest and faithful, and must give his principal all necessary or useful information respecting the concerns of his agency.

Many of these principles are applicable to the case under consideration.

The first inquiry is, whether the plaintiff was authorized to sell the defendant's part of the vessel on credit?—He was not forbidden by his instructions; nor is there any proof in the case tending to shew any usage forbidding it. On the contrary he had directions to sell the defendant's part " as he thought proper",—and to " use his own judgment".—Under this power the plaintiff was fully justified in selling on credit as he did;—the fair value seems to have been obtained; and the credit of Thurston at the time of the sale being perfectly good, the plaintiff was warranted in receiving his personal security. Indeed little or no objection is made to the plaintiff's conduct on this account.

But it is contended that, as the plaintiff took the note from Thurston payable to himself, and did not disclose to his principal the name of the purchaser nor the particular terms of the contract of sale, for some months,—he must be considered as

the surety of *Thurston*,—as guarantying the debt, and assuming on himself any eventual loss of it. But the manner in which the note was made payable can be of no importance in this instance. The cases cited by the plaintiff's counsel, and the case of *Goodenow v. Tyler*, 7 *Mass.* 36. are direct to this point.

With respect to the other branch of the objection, viz. the plaintiff's neglect to give early notice of the terms of the sale, and his giving no notice at all till after the failure of *Thurston*, no authority directly in support of this objection has been cited, except the case of *Simpson v. Swan*, 3 *Campb.* 292. which will presently be examined and compared with the case at bar. The commissions charged furnish no proof of guaranty:—and we are well satisfied that if the defence be substantial, it must be on the ground of negligence on the part of the plaintiff. As the sale was made under a sufficient authority,—to a merchant in good standing,—on credit,—and as the purchaser failed before the day of payment had arrived;—it is not very easy to perceive how the omission to disclose the name of the purchaser before that day did or could prejudice the defendant; or why it should now prejudice the plaintiff. No imputation of fraud is even suggested.—The case cited from 2 *D. & E.* 128. of the neglect of a factor to make insurance, rests on principles different from those which apply to the case before us. In the case from *Cro. Jac.* 265. the agent exposed the goods of his principal to forfeiture by a direct violation of a public statute, as well as of his duty as a factor.

The case of *Simpson v. Swan* has been pressed upon us as a strong authority in favour of the defendant;—and though it was only a *nisi prius* decision, yet it is entitled to respect from the character of the learned Judge who pronounced it, and the acquiescence of the counsel in his opinion. But this case is in several particulars different from the case before us. *Simpson*, the factor, sold the leather consigned to him to a man notoriously insolvent *at the time*;—and according to his usual practice, without naming the purchaser to his principal, he received a bill of exchange for the price, payable to himself; and then made and sent his own note to the defendant for the neat proceeds. *Lord Ellenborough* said that the factor's remitting his note to his principal for the proceeds naturally seemed to close

Greely *v.* Bartlett.

the concern, and that it could not be unravelled without danger. The sale to an insolvent was also considered by the Court as a fatal objection to the action, as the loss had been occasioned by the gross negligence of the plaintiff himself. There was also a distinction taken by the same Judge which is deserving of notice, as it seems to present a principle in aid of the present action. His words are—" If the principal draws " before the sale, it is very reasonable that he should repay the " money when the consideration fails on which the factor grant- " ed the acceptance. Then the principal is deprived of no in- " formation, and is led into no error." Now in the case at bar it appears that in the month of *November* before the sale, the defendant drew bills on the plaintiff for upwards of 1000 dollars, which were accepted in *December* following, payable in *March*, a short time before the sale. This seems to be the precise case stated by *Lord Ellenborough*. For the purpose of raising money to pay these bills, the note of *Thurston* was sold and indorsed by the plaintiff;—and the payment of this note to the indorsee is the ground of the present claim of *Greely* on the defendant. There is another fact appearing in the case which seems to shew the defendant's recognition of the propriety of the sale of his share of the ship, and of the disposal of *Thurston's* note, and his approbation of the whole. We allude to his declaration, when he was informed that the note had been negotiated at a discount of *twelve per cent.* that he would rather have given *twenty per cent.* than that his drafts on the plaintiff should have been protested. This declaration must have been made after the receipt of *Greely's* letter of *August* 19, and sometime after the failure of *Thurston*.

It is contended that the information respecting the sale, when given, was not correct;—that the plaintiff stated the sale to have been for 915 dollars, whereas it was for a thousand. This, however, is explained by other facts. The commissions, and discount on the note, amounted to eighty-five dollars; so that the neat proceeds were exactly 915 dollars. This is only an inaccuracy in the method of stating the account. It was the conclusion, instead of the premises from which that conclusion was drawn. There is also a small variance or disagreement in the charge of 25 dollars for premium, &c :—but this is explain-

ed by the fact, that at the time of drawing out the account, the premium had not been paid.

The last fact relied on by the defendant as proof of culpable neglect in the plaintiff, is the assignment of *Thurston's* effects to certain trustees, and the plaintiff's connection with that transaction. This assignment was made to secure seventy-five *per cent.* of the demands of several creditors, whose claims arose from suretyship for *Thurston* at the custom-house, or as friendly indorsers without consideration. It was not designed to embrace any debts arising in the ordinary course of business, and none such were embraced. The plaintiff, in this concern, guarded his own *business-debts* no better than that of the defendant. Besides, the assignment was made of a vessel *at sea,*—not in a situation to be attached by the plaintiff for the benefit of the defendant : and he could not have compelled *Thurston* to make the assignment in any other form.

On the whole, after a careful examination of the subject, we cannot discover any legal principles by which the plaintiff is bound to sustain the loss which has happened,—or which forbid his reimbursement of the sum he has paid : and we are all of opinion that there must be

                                   *Judgment on the verdict.*