HOWE & CO. v. SUTHERLAND.

1. **Instruction**: EVIDENCE: PRACTICE. It is not error to refuse an instruction based upon a theory of fact which is not supported by evidence, even if it contains a correct legal proposition.

2. ———: ———: ———. The court properly refused an instruction which embodied a correct proposition of law, but based it upon a single fact when it required to be supported by others.

3. **Negligence**: MEASURE OF RECOVERY: FACTOR. Where H., a commission merchant in Chicago, under instructions from S., sold for the latter five thousand bushels of oats upon a time contract, and negligently failed to require a margin, in accordance with the rules of the board of trade, or to notify S. of his right to demand such margin, and also neglected to advise S. that he had sold the oats to parties who were operating a corner which, to be successful, required to be maintained for thirty-two days longer, it was *held* that, upon the failure of the vendees, by which S. lost the benefit of the contract, he was entitled to recover from H. the amount of such loss.

4. **Practice in the Supreme Court**: EXCESSIVE VERDICT: NEW TRIAL. In case of an excessive verdict, the appellee will be allowed to remit the amount in excess of a proper recovery and have judgment rendered in the Supreme Court, or a new trial will be granted and the former judgment reversed absolutely.

*Appeal from Clark Circuit Court.*

TUESDAY, OCTOBER 6.

THIS is an action by the plaintiffs, who are commission merchants of Chicago, to recover an alleged balance due them. The account sued upon is brief—the defendant is charged June 11, 1872, to amount paid on draft, $1,400; and is credited, Aug. 2, 1872, by sale of oats, $689.06, leaving balance

claimed of $710.94. The defendant, by answer, denies indebtedness to plaintiff, but admits the payment of the draft, the shipment of the oats and their sale, Aug. 2, and that the price realized, 27 cents per bushel, was the market price that day; and, for further answer and counter claim, the defendant avers the shipment of five thousand bushels of oats to plaintiffs in June, 1872, and that the market price was then 41 cents per bushel, and by reasonable and ordinary diligence the plaintiffs could have sold the oats and realized that price. He asks judgment for $800. A jury trial resulted in a verdict and judgment for defendant for $586.04. The plaintiffs appeal.

*Karr & Stivers*, for appellants.

*Stewart Bros.*, for appellee.

COLE, J.—I. The evidence in this case is without material conflict, except upon a single question. It tends to prove that plaintiffs are commission merchants in Chicago, Illinois, and the defendant is a grain buyer in Osceola, Iowa. Prior to May 29, 1872, plaintiffs solicited business from defendant, and on that day defendant telegraphed to plaintiffs to sell for him five thousand bushels of oats for June delivery; the telegram was received and acted upon, and on the next day the plaintiffs wrote the defendant that they had received his telegram, had placed the oats on the market, and had sold the same for forty-one cents per bushel, and suggested that defendant could ship as fast as he pleased. The defendant did ship the oats, in seven cars, on the 7th, 8th and 10th days of June, and the last car left Osceola on the 11th day of June; the usual time it takes a car to reach Chicago from there is about thirty-one hours; the precise time of the arrival in Chicago is not shown, but probably on June 10, 11, 14, and 20, the first arrival being one car, and the others two each. In the pleadings there is no issue or question about the quantity of oats, but it is spoken of and treated as 5000 bushels; nor is there any evidence directed to the precise quantity, but one witness speaks incidentally of the quantity as being 4844 bushels.

At the time of making the order by defendant to sell for

him five thousand bushels of oats, and prior thereto, a " corner" in oats existed in Chicago, whereby the price was there raised above its fair and legitimate market value; this " corner" was largely created and maintained by Chandler, Pomeroy & Co., who, as well as plaintiffs, were members of the Board of Trade. By the rules of that board, each party to a time contract had the right to require the other to deposit with the treasurer, as security for the performance of the contract, ten per cent. of the value of the property bought or sold, and (probably,) also a margin to equalize the contract price with the market price. The plaintiffs sold the defendant's oats to Chandler, Pomeroy & Co., but did not require any margin. Prior to the " corner" in oats, the vendees were regarded as abundantly good; after their connection with that was known, many business men doubted their ability to keep and perform their contracts—their solvency was doubted and questioned. At about two o'clock in the afternoon of June 18, 1872, they failed, and their insolvency became generally known at once, and the price of oats which had remained, under the control of the corner, for three weeks or more at forty-one cents, declined immediately to thirty-two cents. The plaintiffs did not re-sell the defendant's oats at once, as they might, under a rule of the Board of Trade, but kept them until August 2, 1872, and then sold them at twenty-seven cents, the market price for that day. The plaintiffs, in answer to defendant's telegram, May 30, 1872, informed him of the corner, of large receipts and of their sale, but not who held the corner, or to whom they had sold.

Upon these matters the court instructed the jury fully, and to which the plaintiff took no exceptions, and do not now make any objection; but they asked the court to give to the jury the following further instructions, which were refused, and thereon they assign error, to-wit: "2. If the jury find that the negligence of the defendant contributed in any degree to the failure in completing the sale of the oats to Chandler, Pomeroy & Co. before their failure, June 18, 1872, then the defendant cannot recover for any alleged negligence of the plaintiffs." It was not error

1. INSTRUCTION: evidence: practice.

to refuse this, because there was no evidence whatever tending to show any negligence on the part of the defendant, even if he had been under obligations to deliver the oats by June 18; there is not a word of testimony or intimation that the utmost diligence by defendant could have enabled him to have the oats in Chicago earlier than he did.

Again, his instructions were to sell for June delivery, and the sale was made accordingly; this gave him all that month in which to deliver, and he had no advice that it was necessary to deliver earlier in order to secure the benefits of his contract; under such circumstances, and when he put all the oats in the cars during the first ten days of the month, a verdict against him upon the theory of his negligence could not be sustained, and it was not, therefore, error to refuse the instruction, even if its correctness as an abstract proposition of law be conceded. This, also, disposes of the third instruction asked, which embodied the same proposition stated in different language.

The court also refused the "4. If you find that in the months of May and June, 1872, there was an oats corner being run in the city of Chicago, and that the defendant was aware of that fact; and that he failed and neglected to order plaintiffs to call a margin on the sale of his oats, and failed to provide plaintiff with the means with which they could deposit a corresponding margin on said sale, then such failure and neglect would amount to contributory negligence, and defendant cannot recover." It was not error to refuse this, because the single fact of the existence of a "corner" would not render the failure to call for a margin, negligence. There are other facts to be taken into consideration also, as, to whom was the sale made, and was the vendee abundantly responsible without a margin; was he connected with the creation and maintenance of the "corner;" and if so, was its magnitude and probabilities such as to endanger the solvency of a responsible vendee; or, was the vendee a responsible consumer, purchasing for his own use, and compelled to pay the "corner" price? In this last case, a high degree of dili-

gence even might not call for a margin; while in the case preceeding, it might be gross negligence not to do so. These sufficiently illustrate the error of the instruction asked and approve the correctness of the ruling of the court in refusing it.

Further than this, the court gave an instruction quite as favorable to the defendant as the one asked as above and refused, and one that covered the same ground substantially, and, at all events, invited to the same result. And to show that in the instructions given the plaintiffs were fairly treated at least, we copy it: "If you find that the sale at that time to persons ordinarily good was dangerous, on account of a "corner" causing fictitious prices, and that defendant knew of such "corner" and fictitious prices, and at the time was engaged in the business of dealing in oats and shipping to Chicago; and that plaintiffs, at the time of making the sale, reported the same to defendant, giving the prices sold for and stating to him that the market was held by a syndicate or a 'corner;' then, in the absence of further instructions from defendant, or other neglect of the plaintiff, the plaintiff will not be held responsible on account of such dangerous condition of the market, or of the failure of the purchasers by reason thereof, provided you find the oats were sold by plaintiff in good faith, to persons who were responsible at the time of sale." We are satisfied that the plaintiffs have no just ground for complaint in respect to the instructions.

II. It is also insisted in argument that the verdict is not sustained by the evidence. The very pivotal point of the 3. NEGLIGENCE: measure of recovery: factor. defendant's case on his counter claim, is, whether under the circumstances shown, an ordinarily prudent and skillful commission merchant would have sold the oats to the very persons who were creating and running the "corner" in oats, and which to be made successful would have to be maintained thirty-two days, without requiring a margin and without advising the principal as to the persons to whom the sale was made, or of his right to have a margin demanded, and of the reciprocal consequences of such a demand. Upon this point the testimony is somewhat in conflict, and there is no ground for interfering with the verdict of the jury thereon.

Indeed we are quite content with it and, if we were acting as jurors, would probably find the same way.

III. The jury returned a verdict for defendant for $630.56. Among other causes assigned in the motion to set it aside was, that it was excessive. The court required the defendant to remit the sum of $44.52, or a new trial would be granted. A remittitur was entered and a judgment was rendered on the verdict for $586.04. Upon calculation, we find that to be just the sum that 4844 bushels of oats would bring at 41 cents per bushel, after deducting the $1,400, paid on defendant's draft. This, of course, leaves the plaintiffs nothing for their commissions or for the freights paid. There is no direct evidence upon the subject of commissions or their value, or as to who paid the freight. Certain freight bills were admitted in evidence for the purpose of showing the date of the arrival of the cars of oats, and these also show that plaintiffs were debited to the railroad company, with charges on the oats aggregating $465.03. The account the plaintiffs sued upon credited this defendant with the net proceeds of sale of the same oats at 27 cents per bushel, at $689.06. By a fair construction of the defendant's answer, he does not controvert the plaintiff's claim or account, if the sale was rightly made at 27 cents per bushel; but he insists that he is, by reason of the plaintiff's negligence or bad and unskillful conduct, entitled to 41 cents per bushel. The oats, 4844 bushels, at 27 cents, would yield $1,307.88, or $618.82 more than the defendant was credited with, in the account sued on, as the net proceeds of the oats. And this sum of $618.82, is $153.79 more than the aggregate of the freight bills debited, or charged in the bills introduced in evidence, to the plaintiffs. This would show, if there were no other charges than for the freight, that the plaintiffs had charged the amount last named above $153.79, for their commissions.

Under the pleadings and evidence we can hardly do more than allow plaintiffs a further remittitur of the amount of the freight bills to-wit: $465.03. There being no testimony whatever as to the value of commissions, and the jury having found

490 SUPREME COURT OF IOWA,

the plaintiffs in the wrong as regards the sale, we cannot allow anything for commissions.

. We will, therefore, reverse the judgment and remand the cause, with instructions to allow the defendant to remit the further sum of $465.03; it may be credited on the judgment as of its date, or a new judgment be rendered for $121.01, to bear interest from that date—all this, in case the defendant shall file in said court his written election to accept such judgment. In case he does not so elect, a new trial in full will be granted, and the former judgment reversed absolutely. Or, if the defendant shall prefer it, he may have such judgment in this court.

