C. C. HOUSEL, PLAINTIFF IN ERROR, v. GEORGE THRALL, DEFENDANT IN ERROR.

1. **Commission Merchant.** A factor or commission merchant, while not a guarantor of the responsibility of the persons with whom he deals, is held to the same degree of care and diligence which a reasonably prudent man would exercise in the management of his own affairs.

2. ———: LIABILITY IN CASE STATED. Where a commission

merchant in Omaha, doing business in San Francisco, caused commission goods to be consigned to another person in San Francisco, that person being one whom the consignor had stated to him he, the consignor, would have no dealings with, such commission merchant could not relieve himself from liability resulting from the loss of the consigned property, on the ground that the person to whom the goods were shipped was a sub-agent, for whose acts he could not be held responsible; and the fact that the goods were consigned to the objectionable person by the consignor would not change the application of this rule, it being shown that the commission merchant was purchasing other goods of the consignor at the same time, and causing them to be shipped to such person in the same way.

ERROR to the district court for Douglas county. Heard below before NEVILLE, J.

*John L. Webster*, for plaintiff in error, cited: Story Agency, § 201. *McCants v. Wells*, 4 S. C. (Rich.), 381. *Darling v. Stanwood*, 14 Allen, 504. *Commercial Bank v. Martin*, 1 La. Ann., 344. *Tiernan v. Commercial Bank*, 7 How., 648. *Daly v. Bank*, 56 Mo., 94. *Dorchester v. Bank*, 1 Cush., 177.

*George W. Doane*, for defendant in error, cited: Story Agency, §§ 13, 14, 452, 454. *Allen v. Merchants Bank of N. Y.*, 22 Wend., 215. *Montgomery Co. Bank v. Albany City Bank*, 3 Selden, 459. *Com. Bank v. The Union Bank of N. Y.*, 1 Kernan, 203. *Smedes v. Bank of Utica*, 20 Johns., 372. *Bank of Orleans v. Smith*, 3 Hill (N. Y.), 560. *Reeves v. The St. Bank*, 8 O. St., 465. *American Express Co. v. Haire*, 21 Ind., 4. *Wingate v. Mech's Bank*, 10 Pa. St., 104. *Borup v. Nininger*, 5 Minn., 417. *Thompson v. Bank of S. C.*, 3 Hills (S. C.), 77. *Tabor v. Perrot*, 2 Gall. (U. S.), 565.

REESE, J.

This action was instituted in the district court of Douglas county. The petition alleges substantially that plain-

tiff below, defendant in error here, employed defendant below, plaintiff in error in this court, who was a forwarding and commission merchant in Omaha, to forward to the city of San Francisco, in the state of California, and sell on commission at the highest market price for cash a certain quantity of lard of the value of $694.72, and that plaintiff in error received the lard and undertook to forward and sell it in the manner agreed upon, and in consideration of the commission agreed to be paid, to exercise due care and diligence in the disposition of the lard, but that he did not use due diligence in that behalf; neglected to sell the lard in San Francisco, and without the consent of defendant in error shipped it to Nevada, and that he has failed to account for the same.

The answer denies the employment, the agreement, receipt of the lard, or that he shipped it to Nevada. Alleges that he had nothing to do with the matter, and hence was guilty of no negligence. It is also averred that at the time the lard arrived in San Francisco it had no market value, and was entirely worthless. The reply is a general denial of the allegations of the answer. The cause was tried to a jury, who returned a verdict for defendant in error. Upon the motion of plaintiff in error for a new trial being overruled, and a judgment being entered upon the verdict, plaintiff in error brings the cause into this court by proceedings in error for review.

By reference to the issues joined, as well as to the testimony introduced on the trial, it may be seen that defendants in error based their right to recover upon the allegation that they employed plaintiff in error personally to handle the property, and that they had no dealings with any other person in that behalf. This being denied by the answer, as well as by the testimony introduced by plaintiff in error, the question of fact thus presented was one for the jury to decide, under proper rulings and instructions of the court.

The errors assigned will be examined in the order in which they are presented by the brief of plaintiff in error.

It is insisted that certain instructions to the jury, as set out by the petition in error, were not applicable to the case as made by the testimony; that they had a tendency to mislead the jury, and for those reasons were improperly given. These instructions are as follows:

"You are instructed that the law holds a consignee in the conducting of the business of a consignor to the same degree of care and diligence which a prudent man would exercise in the management of his own business.

"You are instructed that a factor or commission man, while he cannot be held as a guarantor of the responsibility of the persons to whom he sells in the ordinary course of business, and in accordance with the usages of the market where the sale takes place, must, nevertheless, use all reasonable effort, and resort to all reasonably available sources of information, to learn the pecuniary liability of the purchaser, and if he does not do so, and any loss occurs by reason thereof, he will be liable for such loss."

It is true, as claimed by plaintiff in error, that instructions given to a jury must be applicable to the case as made by the testimony. But it is contended by defendant in error that the instruction is applicable to the testimony and was properly given.

The soundness of the law when applied to a proper case is not questioned. It therefore only remains for us to enquire whether or not it was applicable to the case at bar.

The action was against plaintiff in error as a commission merchant. The allegation is directly made that he undertook to use proper diligence in disposing of the consigned property, and that he failed to comply with his contract in that behalf. The testimony tends to show that when the matter was first talked of between the parties, plaintiff in error suggested the name of a

person in San Francisco with whom he had some business relations as a proper person to whom the property might be shipped, but that defendant in error refused to deal or have any business relations with him, and insisted upon dealing alone with defendant in error, and that this was understood between the parties to the contract. It is shown that the property was shipped to this person. It is true that plaintiff in error denied having had anything to do with the transaction, and in substance so testified. It is also true that defendant in error claimed, and testified in substance, that plaintiff in error was the only person with whom he dealt. Now if we could say that the theory of plaintiff in error was the correct one, then we could also say that the court erred in giving the instruction. But if the defendant's theory was the correct one then the instruction was proper. This question of fact had to be left to the jury, and in doing so it was necessary to so instruct as to state the law correctly applicable to the issue thus presented. *Severance v. Melick,* 15 Neb., 614.

Plaintiff in error requested the court to give the following instructions, which were refused:

"If the testimony satisfies the jury that Housel was doing business in Omaha, and that the lard in controversy was shipped to San Francisco, and was to be sold in San Francisco, and if the plaintiffs knew that Housel was not personally doing business in San Francisco, and that the nature of the business was such that it would be necessary for Housel to employ an agent in San Francisco to sell the lard, then the defendant Housel was authorized to employ a sub-agent in San Francisco to sell the lard, and Housel would only be bound to use ordinary care and diligence in the selection of such agent, and if any loss arose through the carelessness or fault of such agent then the defendant would not be liable in this action."

"If the jury believe from the testimony that Housel authorized the shipment of the lard on his (Housel's) account,

still the plaintiff cannot recover if at the time he knew the lard was to be shipped to San Francisco to be sold by George W. Forbes, as agent, with a knowledge on the part of plaintiff of who George W. Forbes was, as well as of his character and standing, and made no objection to the shipment of the lard to George W. Forbes to be sold by him as such agent. If the plaintiffs intended to hold the defendant Housel for any defalcation or misconduct on the part of George W. Forbes, and the plaintiffs were possessed of a knowledge of the character and standing of George W. Forbes, then it was the business of the plaintiffs to notify the defendant not to have said Forbes employed as a subagent to sell the lard in controversy."

"If the plaintiffs were possessed of a knowledge of the character and business standing of George W. Forbes, and knew that he was the agent to sell the lard in controversy in San Francisco, and the plaintiffs themselves shipped the goods direct to George W. Forbes at San Francisco, and in his name as consignee, then they cannot hold the defendant liable for the value of the goods in controversy on account of any misconduct of the sub-agent, George W. Forbes, unless the testimony further satisfies you that the defendant Housel was also guilty of negligence, and that such negligence on the part of Housel contributed to the default or misconduct of the said George W. Forbes."

The court over the objection of plaintiff in error gave the following instruction:

"If the jury believe from the evidence that Forbes was the agent of Housel, and not plaintiffs, to dispose of the lard in San Francisco, on commission, and that Forbes as said agent did not use due and ordinary diligence in disposing of the lard, and by reason thereof a loss accrued to the plaintiffs, the defendant is liable for such loss, and the plaintiffs are entitled to recover their damages sustained by reason thereof."

It will be seen that by the refusal of the court to give

the instructions prayed for by plaintiff in error, and the giving of the one last above quoted, the question of the subagency of Forbes as a defense was virtually withdrawn from the jury. It may be true that in a proper case the doctrine contended for by plaintiff in error is the law, and that the instructions refused should have been given. But whether it had any proper application to the case at bar is another and more difficult question. This difficulty arises out of the testimony in the case. It is insisted by defendants in error all through the record that they at all times informed plaintiff in error that they were not dealing and would not deal with Forbes; that they would have nothing to do with him in this transaction, and that if they shipped the lard it must be upon the credit of plaintiff in error, and that they would look to no one else for returns, and from a lack of confidence in Forbes they especially objected to having any business relations, either directly or indirectly, with him, and that plaintiff in error stated that he had $2,600 of Forbes' money, and that he would be safe in sending the lard to Forbes to be sold for him, and would do so. If this is true, it would seem that the question of subagency, growing out of Forbes' employment, could have no place in the case. While it is true that plaintiff in error insisted upon the trial that this was not the case, yet in his cross-examination he substantially admitted the facts to be as claimed by defendant in error. From that part of his testimony referring to a conversation with Mr. Thrall, before the shipment was made, we quote as follows:

Q.   Then you had a talk with Mr. Thrall in the street car.

A.   Yes, sir.

Q.   How long after Mr. Roddis had spoken to you?

A.   I don't remember how long it was.

Q.   Was it a few days or weeks?

A.   Probably a week or so.

Q. In that talk that you had with Mr. Thrall in the street car you merely said something to him about wanting to see him about a matter of business that might be of interest to him.

A. I don't recollect that kind of a talk; if I had any business with him I would just as soon have told him in the street car as anywhere else.

Q. State if that talk in the street car was anything more than to the effect that you told Mr. Thrall that you wanted to talk to him about a matter of business that would be of interest to him, and wanted him to come to the office.

A. It is likely I did.

Q. Did he go to the office?

A. I think likely.

Q. You had a talk with him at the office.

A. Probably.

Q. Do you remember what time it was?

A. No, sir.

Q. Was it before any meats were ordered from Roddis & Thrall?

A. I judge it was.

Q. Did you say in that conversation something to him about Roddis & Thrall shipping meats to George Forbes on commission?

A. Only in answer to what Mr. Roddis had said to to me.

Q. What occurred in that conversation between you and Mr. Thrall? In that conversation did you say anything to Mr. Thrall about shipping meats to Mr. Forbes, or shipping lard to Mr. Forbes on commission to San Francisco?

A. I don't think I did, unless it was for them to ship it on their own account.

Q. Did you say anything to them?

A. I don't remember.

Q. Did Mr. Thrall, when Mr. Forbes' name was men-

tioned, say to you in that conversation that that would end the question; if he was to ship to Forbes that he did not care to have any business with him?

A.    I think very likely he said that.

Q.    Don't you remember that he did say that?

A.    I don't think but what he did say that, and I do not deny it.    I think probably he did.

Q.    Did you tell him what he testifies you did about Forbes having been misunderstood; that he came here from Montana with a large amount of money; that he had been in various kinds of business, and taken in by different persons?

A.    I might have told him about Forbes bringing his money home the last time, I do not remember, etc.

By this it appears beyond question that prior to the consignment of the lard it was clearly understood that defendants in error were not willing to make consignments to Forbes, or have any dealings with him, and the evidence fails to show any agreement or contract by which it is made to appear that they had any dealings with him.    The fact that they shipped the lard to "George W. Forbes, agent," argues nothing, since they were at the same time shipping to him other consignments of meat, etc., in the same way, which plaintiff in error had purchased.    While it may be that plaintiff in error, by the usages of trade, or otherwise, had authority to employ a subagent, for whose acts he would not be responsible, if not negligent in the selection, yet after the declarations made by Thrall he could not then select the objectionable party and avoid the liability, even if he had such authority ordinarily in the usual course of trade.    We therefore think the court did not err in refusing the instructions asked.

It is contended that the court erred in admitting certain letters, etc., in evidence.    The first of these is a letter referred to in the record as exhibit "A."    This letter was written by Forbes to plaintiff in error, and by plaintiff in

error delivered to defendants in error. It was written and received before the consignment was made. It suggests the sending of the lard on commission, and says, referring to defendants in error and others: "If those parties prefer to send lard on commission, let them send it, and say to them that you will handle it for five per cent commission," etc. This letter having been received by plaintiff in error and delivered by him to defendants in error was, to say the least, a circumstance tending to show that he considered himself as dealing with them, and interested in the transaction. The next is a postal card written in San Francisco, signed "C. C. Housel & Co., F.," acknowledging the receipt of the lard. It was written by Forbes, and was competent for the purpose of showing this one fact; the lard having been shipped to him with the knowledge of Housel. But the error in this matter, if it was error, was without prejudice, as no issue is made upon it, the receipt of the lard by Forbes not being disputed.

Certain other letters and correspondence were admitted over the objections of plaintiff in error, and of which complaint is made. These letters were written either by plaintiff in error to defendant in error, or by Forbes to plaintiff in error, and by him delivered to defendant in error. Coming as they all did from plaintiff in error, and each tending to throw some light upon the transaction, their admission was proper.

We are unable to perceive any prejudicial error in the record. The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.