DANIEL W. SHOYER et al., Copartners under the Firm
Name of D. W. SHOYER & Co., Appellants, v. EDMUND
WRIGHT-GINSBERG CO., INC., Respondent.

**Contract — factors — action on contract by which defendant
agreed to sell goods to be manufactured by plaintiffs, advance
eighty-five per cent on net outstandings and guarantee credit
risks, the advances to be made on sales completed by delivery
— agreement construed and held not to make defendant a del
credere factor liable for all orders taken — when defendant
not entitled to judgment on counterclaim for advances on
goods.**

1. Plaintiffs, who are manufacturers of certain goods, entered into
a contract with defendant, which described itself as "factors and
commission merchants," for the disposition of plaintiffs' goods with
the aid of defendant. By it defendant agreed to assign space
suitable for the sale of plaintiffs' merchandise and to make no charge
for "deliveries" in a certain district. Defendant further agreed
to check and guarantee plaintiffs' accounts as approved by defendant's
credit department, also to make certain advances to plaintiffs, for
which services, including commissions, the defendant was to receive
a percentage of the net value of the merchandise. The agreement
further provided that "All merchandise claims and disputes or
controversies relating to the merchandise itself must be settled by
you or by us, if you prefer, at your risk and expense." Defendant
"assuming the credit risk only." Construing the provisions of this
contract it must be held that the contract did not either expressly
make a *del credere* factor of defendant, responsible for the completion
and amount of sales, whether the purchaser carried them out or
not, nor did its terms display any such ambiguity on this subject as
permitted plaintiffs by parol evidence to show that such was its
meaning. It follows that plaintiffs cannot maintain a cause of action
charging defendant as a *del credere* factor with the entire amount of
sales reported by and approved by it, upon which orders goods
were shipped by plaintiffs but refused by purchasers who were not
bound by sufficient contracts, under the Statute of Frauds, to take
such goods.

2. Plaintiffs seek also under another cause of action to recover
from defendant, upon allegations that it was an ordinary factor
or selling agent and as such was guilty of actionable misconduct

in inducing plaintiffs to manufacture goods to fill purported orders which defendant was bound to know were invalid and which, as matter of fact, were never taken up by the purported purchasers. If the term " factor," as used in this contract, has its usual meaning and denotes a selling agent, defendant assumed the obligation to discharge its duties with skill, care and fidelity and this obligation would include the duty, at least, of informing plaintiffs of any facts which vitally affected the validity and reliability of the orders sent to them by defendant. If, as alleged, the defendant failed to discharge this obligation and induced the plaintiffs by such purported, but actually invalid, orders to manufacture goods for the purpose of filling them, the defendant is liable for such damages as have been sustained in consequence of its dereliction.

3. The word " factor," however, is so far a technical or trade term that it will be permissible for defendant to show, if it can, that by general usage and understanding in the locality where this contract was made and was to be carried out another meaning had been so given to the word, that plaintiffs were chargeable with it, and further, if defendant can show that by their acts under the contract the parties gave a practical construction to the word which confirms defendant's claim that it meant a person who merely advanced money on goods consigned to him or on accounts receivable transferred to him, then and in that case plaintiffs cannot recover under this cause of action.

4. Defendant interposed a counterclaim for alleged excess of advances made by it to plaintiffs and has obtained judgment therefor and plaintiffs appeal therefrom. If it shall be determined that defendant was a factor and as such intrusted with the possession of plaintiffs' goods and charged with the duty of selling them as such duty is discharged by an ordinary factor, it had a lien upon such goods for any amount due to it springing out of this relationship as factor and under such circumstances it would be its duty to enforce this lien for the satisfaction of its claims before seeking a personal judgment against plaintiffs. If, on the other hand, it should be determined that defendant was not a factor within the definition discussed but was as it claims a mere commercial banker having no lien upon goods which came into its possession, it would necessarily have the ordinary right of enforcing its claims against plaintiffs by action.

*Shoyer* v. *Wright-Ginsberg Co.*, 210 App. Div. 645, modified.

(Argued April 8, 1925; decided May 5, 1925.)

Appeal, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial

department, entered November 17, 1924, unanimously
affirming a judgment in favor of defendant entered upon
a verdict directed by the court.

I. *Maurice Wormser* and *Karl W. Kirchwey* for appellants. Under the contract between the parties dated
March 20, 1919, defendant was a *del credere* factor for
plaintiffs and guaranteed all of plaintiffs' contracts and
orders from customers for the sale of plaintiffs' merchandise, or, in any case, the contract was ambiguous
in this respect. (*Buckley* v. *H. R. Ry. Co.*, 212 N. Y.
440; *Utica City Nat. Bank* v. *Gunn*, 222 N. Y. 204;
*Gumbinsky* v. *Smalley*, 203 App. Div. 661; 235 N. Y.
619; *Wolff* v. *Koppel*, 2 Denio, 368; *Cartwright* v. *Greene*,
47 Barb. 9; *Leverick* v. *Meigs*, 1 Cow. 645; *Blakely* v.
*Jacobson*, 9 Bosw. 140; *Sherwood* v. *Stone*, 14 N. Y. 267;
*Peale* v. *Marian Coal Co.*, 190 Fed. Rep. 376, 384;
*Commercial Credit Co.* v. *Girard Nat. Bank*, 92 Atl. Rep.
44.) Under the terms of the contract between the parties
dated March 20, 1919, the defendant, as factor, was
liable for the gross negligence of the selling agent, in
connection with the sale of plaintiffs' merchandise.
(*Heinemann* v. *Heard*, 50 N. Y. 27; *Whitney* v. *Martine*,
88 N. Y. 535; *Duguid* v. *Edwards*, 50 Barb. 288; *Ladd*
v. *Arkell*, 5 J. & S. 35; *Davis* v. *Reynolds*, 48 How. Pr.
210; *Leverick* v. *Meigs*, 1 Cow. 645; *Newburger-Morris
Co.* v. *Talcott*, 219 N. Y. 505; *Dolan* v. *Thompson*, 126
Mass. 183; *Buckley* v. *Hudson River Ry. Co.*, 212 N. Y.
440.) Under the contract between the parties dated
March 20, 1919, as modified by the subsequent agreement
between the parties dated November 5, 1919, defendant
was not entitled to recover on its counterclaim from the
plaintiffs the amount of the advances made by defendant
to plaintiffs on the plaintiffs' merchandise, without first
exhausting its security by the enforcement of its factor's
lien upon said merchandise. (*Gihon* v. *Stanton*, 9 N. Y.

15

476; *Newburger-Morris Co.* v. *Talcott*, 219 N. Y. 505; *Corlies* v. *Cumming*, 6 Cow. 181; *Matter of Atwood & Sons*, 3 App. Div. 578.)

*Wilbur L. Ball* and *Chandler Bennitt* for respondent. The factoring contract of March 20, 1919, was perfectly clear cut; the court was entirely correct in refusing to admit parol evidence to extend defendant's guaranty from a guaranty of accounts receivable into a guaranty of all executory sales contracts whether or not matured into such accounts receivable. In fine, the defendant did not agree to be a *del credere* factor. (*Wittkowski* v. *Harris*, 64 Fed. Rep. 712; *Blakely* v. *Johnson*, 9 Bosw. 140; *Eiseman & Co.* v. *Kugelman*, 188 App. Div. 718; *Gumbinsky Bros. Co.* v. *Smalley*, 203 App. Div. 661; *Reiss* v. *Usona Shirt Co.*, 174 App. Div. 181.) There was no error in the court's direction of a verdict for defendant upon its counterclaim. (*People* v. *Remington*, 121 N. Y. 328; *Newburger-Morris Co.* v. *Talcott*, 219 N. Y. 505; *People* v. *Remington*, 121 N. Y. 328.)

Hiscock, Ch. J. This appeal involves the subject of factorage. The plaintiffs were manufacturers of a kind of piece goods known as chevalette. The defendant described itself as " factors and commission merchants." As the result of prior negotiations a written contract was entered into for the disposition of plaintiffs' goods with the aid of defendant. This contract was in the form of a letter written by defendant and accepted by plaintiffs. It commenced with the introduction that it was " a statement of the terms and conditions upon which we (the defendant) agree to act as factors for your company." By it defendant agreed to assign space suitable for the sale of plaintiffs' merchandise and to make no charges for " deliveries " in a certain district and then further agreed in part as follows: " We also agree to check and guarantee your (plaintiffs') accounts as approved by

1925.|          Opinion, per Hiscock, Ch. J.      [240 N. Y. 223]

our credit department. We further agree to advance you eighty-five per cent (85%) of your net outstandings, subject to your call. The remaining fifteen per cent (15%) we will settle monthly * * *. We shall receive as compensation for our services ten per cent (10%) commission on the net value of the merchandise. This is to include our commissions as well as that of the selling agent.

"All merchandise claims and disputes or controversies relating to the merchandise itself must be settled by you or by us, if you prefer, at your risk and expense. We assuming the credit risk only."

After this agreement was executed sales were directly made by one Noonan who had an office with defendant and whose status, whether that of agent of the defendant or of the plaintiffs, is a subject of dispute. Orders on these sales were approved by defendant and forwarded to the plaintiffs who shipped the goods thereby called for to defendant. Originally bills for these goods were made out in favor of defendant and later in favor of Noonan, it being claimed that the former form was adopted by reason of an assignment of the bills to defendant. Advances were made to plaintiffs in accordance with the terms of the contract but after a while the former discovered that the goods shipped by them to defendant on the orders forwarded by the latter were not being promptly accepted by the purported purchasers and, therefore, the amount coming to plaintiffs from defendant under the contract was diminished. It transpired that the cause of the failure of delivery by defendant of the goods received by it from plaintiffs on purported orders was that no memorandum had been taken on the sale of the goods which made a sufficient contract under the Statute of Frauds and that purchasers were refusing to take their goods.

After this situation arose a supplemental contract was made between the parties looking to a solution of their

difficulties but that contract in our judgment does not change the original contract in respect of the questions before us for decision.

Eventually plaintiffs brought this action setting forth three causes of action. Two of these causes of action are founded upon the theory that the contract which we have summarized either expressly made defendant a *del credere* factor or at least employed terms and provisions whose defects and ambiguities were such that parol evidence was admissible for the purpose of establishing the interpretation claimed by plaintiffs, and on this theory they sought to charge defendant with the entire amount of sales reported by it to plaintiffs whether the original purchasers had completed their sales or not. By a third cause of action plaintiffs claimed that defendant was a factor charged with the duty of selling its goods and collecting the purchase price for which it was to receive a commission and that, as such, it was bound accurately to report sales and that when it reported as valid sales those which were not so because of the fact above stated, and thereby induced plaintiffs vainly to manufacture goods to fill those orders which were not accepted by purchasers, it failed in its duty and became liable for damages.

In addition to denying these claims of plaintiffs, defendant made a claim of its own for an excess of advances which it had made to plaintiffs. The court by directed verdict dismissed all of plaintiffs' claims and directed a verdict for the amount of the counterclaim notwithstanding plaintiffs' contentions that defendant had in its possession a large amount of plaintiffs' goods consigned to it and that it was its obligation as a factor to collect any amounts due to it from these goods before resorting to the personal liability of plaintiffs.

We shall take up the claims thus arising in the order in which they have been stated. We do not think that the contract between the parties either expressly made a

*del credere* factor of defendant responsible for the completion and amount of sales whether the purchaser carried them out or not, or that its terms displayed any such ambiguity on this subject as permitted plaintiffs by parol evidence to show that its meaning was as contended by them. It seems to us so far as this question is concerned that defendant by its contract fairly excluded the broad responsibility of a *del credere* factor which plaintiffs are trying to fasten upon it. At the very outset the contract defines itself as an agreement under which defendant is to act as " factors " for plaintiffs and the word " factors," as we shall hereafter point out, does not in its ordinary meaning indicate one who has assumed the unusual obligations of a *del credere* factor. The further provisions which we have quoted fully confirm, as we think, the conclusion that it was not intended to define a factor of this latter class. By its provisions the defendant agrees " to check and guarantee your (plaintiffs') accounts as approved by our *credit department.* We (defendant) further to advance you eighty-five per cent (85%) of your *net outstandings*, subject to your call." If it were otherwise reasonable to give to the word " accounts " a meaning coextensive with " sales or orders " and in that way put defendant in the attitude of having guaranteed orders, this stretch of definition would be obstructed by the outstanding provision that these accounts were to be approved by the " credit department " and that the advances to be made by defendant were to be a certain percentage of " net outstandings." This language seems to us plainly to imply that the parties were talking about accounts receivable and not about orders and that defendant's guaranty was of such accounts receivable and not of orders, as would be the guaranty in case of a *del credere* factor. And then there is still another provision which further confirms this view. After providing for the settlement of merchandise claims and controversies the contract says in

a distinct sentence which seems to us to qualify the entire contract: " We (defendant) assuming the *credit* risk only." So, taking all of these provisions together, we conclude that the contract was not ambiguous and that plaintiffs' alleged causes of action founded on the idea of a *del credere* factor were not sustained but were properly dismissed.

Not so, however, with the third cause of action. While plaintiffs there still cling to the attempt to impose upon defendant the character of a *del credere* factor they nevertheless allege failures to discharge duties justly claimed, as we think, to be attributable to an ordinary factor. They say that the factor described in the contract was their selling agent and that as such it was guilty of actionable misconduct in inducing plaintiffs to manufacture goods to fill purported orders which defendant was bound to know were invalid and which, as a matter of fact, were never taken up by the purported purchasers. The fundamental question embodied in this cause of action involves the meaning of the word " factor " and the extent of his duties. The contract which the defendant prepared described it as factor and there is nothing in the contract which destroys this contractual description which defendant gave of itself. If, therefore, the ordinary, presumptive meaning of the word " factor " in such a contract as this denotes a selling agent with certain obligations to his principal, a foundation, which may prove temporary, has been laid for plaintiffs' claim. They undoubtedly are right that if this word means a selling agent they were not compelled after using it to set forth a definition of it in the contract by specifically alleging that as factor defendant undertook the duties which were implied by the word itself. We think that the standard, presumptive meaning of the word " factor " does include and denote a selling agent. (Mechem on Agency [2d ed.], sec. 2497; *Duguid* v. *Edwards*, 50 Barb. 288, 295; *Hall* v. *French-Am. Wine Co.*, 149 App. Div. 609; *Edgerton* v. *Michels*, 66 Wis.

124, 130; *Beardsley* v. *Schmidt,* 120 Wis. 405; *Baring* v. *Corrie,* 2 B. & Ald. 139; *Younker* v. *W. Un. Tel. Co.,* 146 Ia. 499; *Slack* v. *Tucker & Co.,* 23 Wall. [U. S.] 321.)

If defendant was the general selling agent then presumptively the particular agent who went out and secured orders came within the area of its powers, responsibilities and supervision and his derelictions in inducing defendant to manufacture goods on invalid orders would come home to it. On the present assumption that defendant as a factor became the selling agent of plaintiffs, it, of course, assumed the obligation to discharge its duties with skill, care and fidelity to its principals. Such obligation would include the duty at least of informing its principals of any facts not known to them which vitally affected the validity and reliability of the orders which were being sent to them and without doubt would include the duty to inform their principals, if not otherwise acquainted with that fact, that purported orders which were being forwarded to them were as a matter of fact invalid, and could not be enforced. If, as claimed, they failed to discharge this obligation and induced their principals by such purported, but actually invalid, orders to manufacture goods for the purpose of filling them, they are liable for such damages as have been sustained in consequence of their dereliction. (Mechem on Agency [2d ed.], sec. 2532; *Howe & Co.* v. *Sutherland,* 39 Ia. 484; *W. U. Cold Storage Co.* v. *Winona Produce Co.,* 197 Ill. 457, 458; *Greely* v. *Bartlett,* 1 Me. 172; *Housel* v. *Thrall,* 18 Neb. 484.)

Thus much on the acceptance of the plaintiffs' theory in its allegations of this cause of action. But as we have intimated the foundation for their claim furnished by the interpretation which we have given to the word " factor " may prove to be a temporary one. The defendant insists that although the definition adopted by us may have been the original and ordinary meaning of the word " factor," such definition has yielded to later

commercial and trade usages and understanding at least in the locality where this contract was made and that in accordance with them the word " factor " no longer, under the circumstances involved in this litigation, indicates a person enjoying the powers and bearing the responsibilities of a selling agent. The meaning which defendant says has been thus given to the word is that of a person who merely advances money on goods consigned to him or on accounts receivable transferred to him and who thus becomes simply a commercial banker making loans on certain securities.

We think that the word " factor " is so far a technical or trade term that it will be permissible for defendant to show if it can that by general usage and understanding in the locality where this contract was made and was to be carried out this meaning had been so given to the word that plaintiffs were chargeable with it and further, if it can, that by their acts under the contract the parties gave a practical construction to the word which confirms defendant's claim of its meaning. (4 Wigmore on Evidence [1st ed.], secs. 2463–2465; *Krstovic* v. *Van Buren*, 235 N. Y. 96, 100; *Dana* v. *Fiedler*, 12 N. Y. 40, 46; *Underwood* v. *Greenwich Ins. Co.*, 161 N. Y. 413, 424; *Newhall* v. *Appleton*, 114 N. Y. 140, 144; *Walls* v. *Bailey*, 49 N. Y. 464; *Gumbinsky Bros. Co.* v. *Smalley*, 203 App. Div. 661; affd., 235 N. Y. 619.)

If defendant should be able successfully to carry this burden of proof it would follow that the foundation would be removed for plaintiffs' claim.

The third question involving defendant's right to a judgment for the alleged excess of advances made by it to plaintiffs may be briefly disposed of. It is so related to the questions already discussed that their decision will necessarily dictate its decision. If it shall be determined within the principles already set forth that defendant was a factor and as such intrusted with the possession of plaintiffs' goods and charged with the duty of selling

them as such duty is discharged by an ordinary factor, it had a lien upon plaintiffs' goods for any amount due to it springing out of this relationship as factor and under such circumstances it would be its duty to enforce this lien for the satisfaction of its claims before seeking a personal judgment against plaintiffs. ( *Newburger-Morris Co.* v. *Talcott*, 219 N. Y. 505, 511.)   If, on the other hand, it should be determined that defendant was not a factor within the definition discussed but was as it claims a mere commercial banker having no lien upon goods which came into its possession, it would necessarily have the ordinary right of enforcing its claims against plaintiffs by action.

These views lead to the conclusion that the judgments in so far as they dismiss plaintiffs' first and second causes of action should be affirmed and in so far as they dismiss plaintiffs' third cause of action and award to defendant recovery of its counterclaim reversed and a new trial granted, with costs to abide event.

CARDOZO, MCLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur; POUND, J., absent.

Judgment accordingly.