JOSEPH LUCISANO, Plaintiff, *v.* ANTHONY PARATORE, Defendant.

Municipal Court of the City of Syracuse, March 28, 1949.

*Saul H. Alderman* for plaintiff.

*Pasquale Aloi, Jr.,* and *Roger O. Baldwin* for defendant.

SKERRITT, J. The plaintiff, vendee in a contract to purchase a one-family brick house, has brought this action against defendant vendor to recover damages of $3,000 for breach of the agreement. The question is whether this contract, which calls for a " brick house " at a price of $15,000, was fully performed by the conveyance of a " brick veneer " house. My limited research has disclosed no decision involving this question.

This house, located in a residential section of the city of Syracuse, is of wood-frame construction, with an exterior brick wall four inches thick, laid over sidewalls of wood and celotex on all four sides of the building. Plaintiff claims that a " brick house " is a house with exterior walls of " solid brick ", consisting of two brick walls, each four inches thick, with a total thickness of eight inches; and that such double-wall construction is more durable and expensive than this " brick veneer ".

Defendant claims that " solid brick " walls are no better, though more expensive; that in any case there is an established custom or usage in the local building trade whereby it is generally recognized that the exterior walls of a brick dwelling house are built of one layer of brick over wood or celotex or hollow tile, but not of double brick; and that the plaintiff knew or should have known of this trade usage when he signed the contract. This case, therefore, deals only with genuine brick, and not with metal sheeting or other exterior wall covering often used in imitation of brick.

Plaintiff is a retail grocer. Defendant is a reputable building contractor. There is no claim of misrepresentation. In this action, therefore, the question is clearly presented as to whether the phrase " brick house ", when used with reference to a dwelling house, implies that the exterior brick walls are four inches or eight inches in thickness.

From the evidence, including the testimony of architects and builders, I find that it may have been the practice in the local

building trade forty years ago to use these double brick walls in the construction of dwelling houses, but that such practice has been discontinued; and that it has been the local custom or trade usage for the past twenty-five years to use this brick veneer construction — a single brick wall four inches thick over wood or celotex or tile. I also find that this established custom or usage is widely known and well recognized in this locality; and that the plaintiff knew of it or should have known when he signed the contract.

As to the meaning of the word " brick ", with reference to dwelling houses at the present time in the United States, it is well recognized among architects and builders that a brick is eight inches long, four inches wide, and two inches thick; and that in common parlance, relating to dwelling houses in this country, a brick wall is ordinarily four inches thick. (*Peters* v. *City of Chicago,* 192 Ill. 437; *State* v. *Perry,* 226 N. C. 530.)

As to plaintiff's contention that evidence of this trade usage was not admissible to explain the phrase " brick house ", it is a basic rule of construction, when the language in a contract may have more than one meaning, to read the contract in the light of the circumstances under which it was made. In such case parol evidence is received to show the sense in which the language was used. (*Fleischman* v. *Furgueson,* 223 N. Y. 235; *Robertson* v. *Ongley Elec. Co.,* 146 N. Y. 20.)

Pursuant to this principle, parol evidence of a trade usage or custom is admissible, not to contradict the express terms, but to show the special meaning of words. Thus parol evidence was received to explain " on approval " in the diamond trade; " order " in a sale of books; " for the season " in a contract of employment; " factor " in a contract for the disposition of goods. (*Smith* v. *Clews,* 114 N. Y. 190; *Newhall* v. *Appleton,* 114 N. Y. 140; *Shoyer* v. *Wright-Ginsberg Co.,* 240 N. Y. 223.) Likewise in a contract for the sale of paper of a certain quality, parol evidence was admissible to show a trade usage as to variation in grade and thickness of the paper. (*Oswego Falls Pulp & Paper Co.* v. *Stecher Lithograph Co.,* 215 N. Y. 98.)

Contrary to early decisions, parol evidence of usage is now admissible, not only to explain ambiguities and technical terms in a contract, but to explain ordinary words, and even in some cases to annex collateral agreements otherwise barred by the parol evidence rule. As to whether the plaintiff in the instant case knew of this trade usage in the construction of brick houses, I find from the evidence that he either knew of it or should have

known. In either case he comes within the principle that a party to a contract who seeks to explain or annex a term by evidence of usage may do so by showing a well-defined usage, which is generally followed in the business to which the contract relates, in the locality where it was made. (3 Williston on Contracts [Rev. ed.], §§ 650, 652, 654, 661; 22 Col. L. Rev. 741; and for an interesting discussion, 46 Col. L. Rev. 167, 178.)

In my opinion this contract for a " brick house " was fully performed by defendant's conveyance of this house of " brick veneer ". Complaint dismissed. Judgment for defendant, with costs.