## J. T. and E. BONHAM *v.* OVERTON, CHISM & CO.

Where a factor received a consignment with orders to sell for cash, sold to a person who, after receiving the merchandise, absconded without paying for it. *Held*: That if it be conceded, that there is a usage of trade, the legality of which is questionable, to allow the buyer a few days to look over the bill, even in cash sales, before payment, still the factor is bound to act with due prudence in trusting the purchaser; and if he be not a person in good credit, the factor is liable to the consignor.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Wolfe* and *Singleton*, for plaintiffs. *H. T. Hays*, for defendant. The judgment of the court was pronounced by

SLIDELL, J. The plaintiffs, who are merchants residing in Illinois, consigned to the defendants, factors in New Orleans, a quantity of lard and pork for sale. On the 28th March, 1851, the defendants sold it to one *Quinn*. The price was $2471 79. It was weighed and delivered to him on the 29th. On the 30th, which was a Saturday, the bill was presented to *Quinn*. On the following Monday he was called upon for payment, and replied that he could not pay. On Tuesday, the defendants and another house, who had also made him a cash sale, induced *Quinn* to turn over to them some merchandise, to be applied to the

payment of their claims. A day or two after this, *Quinn* absconded. The plain-- tiffs were credited with the amount thus collected; and there remained a deficit upon the price of the pork and lard, which the defendants declined to pay.

The defendants contend, that they have established, by the testimony in this cause, a usage to deliver merchandise of this sort after the weighing; to send in the bill as soon as the weigher's return is made, and to leave it a day or two for the purchaser's examination, before demanding the money.

The testimony of several merchants who were examined upon this subject, may be considered as proving that, in cash sales, delivery of such merchandise is frequently made a day or two before payment, where the seller is satisfied with the character and solvency of the buyer; the matter being, however, one of courtesy, and resting in the vendor's discretion.

On the part of the plaintiffs it was contended, that the evidence was insufficient to prove a usage, certain, general, frequent and long established. It was also argued, and we are inclined to think correctly argued, that the alleged usage was unreasonable in itself, and one which courts should not encourage, because it opens a wide door to speculation and fraud. We have not, however, thought it necessary to pass upon these points. For even if it be conceded that the usage is satisfactorily proved, and is applicable to the case of a factor charged to sell for cash, the defendants are not, under the circumstances of this case, protected by it.

We are not satisfied, by the evidence, that the defendants acted with due prudence in trusting *Quinn*. It is proved, that he came to New Orleans about a year previous, a stranger, without capital, and in search of employment in some mercantile house. Being disappointed in this, he entered into business in a small way on his own account; and although he made, from time to time, cash purchases in a similar manner, he does not appear to have acquired, at any time, a well established mercantile standing; and what credit he had enjoyed, was impaired before the defendants dealt with him. There was imprudence on the part of the defendants, in parting with the possession of the property before receiving the price; and its consequences must be borne by themselves.

In stating our conclusion upon the question of prudence, we have not considered it necessary to enter into a detailed statement of the evidence; but it is not improper to observe, that a very cogent argument, in favor of the plaintiffs, may be deduced from the opinion and conduct of another house, who dealt with *Quinn*. A partner of this house was introduced as a witness by the defendants, to prove that they sold to *Quinn* goods consigned to them, and gave him possession before receiving the price. But the witness, on his cross-examination, stated, that his house had accounted to their consignor for the amount of *Quinn's* defalcation. He acknowledged that they had acted loosely in giving him credit, and that his position in the mercantile community did not entitle him to it.

It is therefore decreed, that the judgment of the district court be reversed; and that the plaintiffs recover from the defendants, the sum of $1323 17, with interest from 10th December, 1450, until paid, and costs in both courts.