FRICK & COMPANY v. C. G. LARNED & COMPANY.

1. AGENTS — *Commissions, Overpaid — Recovery — Limitation of Action.*
Where it was agreed that agents should receive a stated commission
for the sale of machinery, and it was provided that commissions
should be paid on cash payments only, and that no commission was
to be paid or retained on sales made to irresponsible parties, nor
where the debts for which the machinery was sold were uncollectible,
and where it appeared that the agents under this contract sold ma-
chinery which was to be paid for at a future time, and represented
that the notes taken were good, and would be paid at maturity, and
the principal, relying upon these statements, paid the commission
in full, and afterward it was found that the purchasers who gave the
notes were insolvent, and only a small part of the purchase price
was paid, *held*, in an action brought for that purpose, that the prin-

cipal was entitled to recover the difference between the commission which was paid and the amount actually earned by the agents under the terms of the contract; and further, *held*, that the action arises on contract and is not barred by the two-years statute of limitations.

2. NEGLIGENT AGENT — *Loss* — *Liability to Principal.* Where an agent is required to exercise care and diligence in ascertaining the financial standing and ability of proposed purchasers, and the principal, relying upon the exercise of due care by the agent and that he has made full inquiry as to the truth of the representations made by the purchaser concerning his property and financial ability, is induced to sell machinery to an irresponsible party on credit, who was actually insolvent, and where it appears that the agent exercised no care and made no inquiry, he is liable to the principal for the loss sustained because of such neglect.

*Error from Sumner District Court.*

FRICK & COMPANY brought an action against *C. G. Larned & Co.* to recover the sum of $1,741.59. The grounds for recovery, as stated in their petition, are as follows:

"First, that the plaintiff is a corporation created and existing under and by virtue of the laws of the state of Pennsylvania, and doing business in the state of Kansas as well as other states, in the manufacture and sale of threshing machines, engines, and separators; that on the 6th day of November, 1884, the plaintiff herein appointed the defendants herein as its agents to sell its threshing machines, engines and separators through the counties of Sumner and Harper, under a contract then and there entered into by plaintiff and defendants whereby the defendants accepted the agency and appointments under certain agreements and terms in a written contract, a copy of which said contract is hereto attached, marked 'Exhibit A,' and made a part of this petition; that it is by said contract mutually agreed by and between the plaintiff and defendants, under the fourth clause of said contract, that the commission to be allowed to said defendants for the sale of said portable engines and traction engines for farm and other purposes, and for separators and horse powers, should be 17 per cent. of the amount of such sales, provided no commission should be allowed said agents on any articles taken back, or any sale to irresponsible parties, or any portion of such sales as will be uncollectible; that on June 27, 1884, the said defendants, as agents of the plaintiff, sold to Jonathan Anderson, William M. Riley and Preston Douglass one

Frick & Company's (eclipse) traction, self-guide engine, No. 3361, and one Frick & Company's vibrating threshing machine, No. 1104; for the sum of $1,765; that said Jonathan Anderson, William M. Riley, and Preston Douglass, on the 27th day of June 1884, made and executed and delivered to C. G. Larned & Co., as agents for said plaintiff, three promissory notes, one for $588, due on the 1st day of October, 1884, with interest at the rate of 8 per cent. per annum from date; another due on the 1st day of October, 1885, for the sum of $589, with interest at the rate of 8 per cent. per annum from date; and another for the sum of $588, due on October 1, 1886, with interest at the rate of 8 per cent. per annum from date, copies of which notes are hereto attached, marked, respectively, exhibits 'B,' 'C,' and 'D,' and made a part of this petition; and for better securing the said notes the said Jonathan Anderson, William M. Riley and Preston Douglass made and executed at the same time a chattel mortgage on live stock and on the engine and separator so purchased by them, and delivered it to said C. G. Larned & Co. for said Frick & Company, a copy of which said chattel mortgage is hereto attached, marked 'Exhibit E,' and made a part of this petition; that said Jonathan Anderson, William M. Riley, and Preston Douglass, or any of them, have never paid the said notes or any part thereof, except $250, paid December 5, 1884; and said plaintiff was compelled to foreclose said chattel mortgage, after giving due notice of the time and place appointed for said sale, and the proceeds of said sale, after expenses of selling under said chattel mortgage, amounted to $277.59; that the plaintiff has never received a dollar of the remainder due from said parties that made said notes, and is unable to collect anything thereon, for the reason that they were and are insolvent; that the defendants, at the time of the sale, represented to the plaintiff that the said notes were good and would be paid at maturity, and that said plaintiff, relying upon the statement so made by the defendants, paid the said defendants the sum of $300.05 as commission on such sale; that all plaintiff has ever collected of said notes and chattel mortgage was the sum of $527.59.

"Wherefore, the defendants were entitled to receive only $89.69 as commission on such sale. Wherefore, the plaintiff demands judgment against defendants for the difference between $300.05 and $89.69, amounting to $210.36, and costs of suit, and such other and further relief as may be deemed by the court just and equitable.

"Second cause of action: And plaintiff herein, for a further and second cause of action against the said defendants, says:

"It was by said plaintiff and defendants, in the ninth clause of said contract, to which reference is heretofore made, mutually entered into and agreed, that said defendants should take written orders or blanks furnished by the plaintiff for all such contracts, and send plaintiff the original and keep a copy of the same, and that the defendants would take a blank statement of the ability of the person to make payments, and that it should be invariably filled out; and that the defendants then and there agreed that they would not send any order to the plaintiff for approval until the defendants had thoroughly convinced themselves that the statements made by the purchaser or purchasers were based on a fair value of the property at the time such statements were made, by an examination of the records or by making full inquiries of the residents in the locality of the purchaser, and every means which would assure them of the correctness of the statements made by the purchaser; that at the time of said purchase, to which reference is heretofore made, the said Jonathan Anderson made and signed a property statement for the purpose of obtaining credit at the time from said Frick & Company, a copy of which is hereto attached, marked 'Exhibit F,' and made a part of this petition, and in which said statement the said Anderson claimed to own in his own name 160 acres of land in section 36, in township —, in range 5, worth $2,000, which was free of incumbrance except $500, and personal property worth $2,000 over and above his indebtedness and exemptions, and that said property was not incumbered; that the said plaintiff sold the said engine and separator to said Jonathan Anderson, William M. Riley and Preston Douglass solely on the basis and representation in the property statement of said Jonathan Anderson furnished by him for the plaintiff through the defendants being true, and on belief that said defendants had investigated the statement of the ability of said parties, and especially said Jonathan Anderson, to pay to the plaintiff as represented; that, upon the belief that the said C. G. Larned & Co. had investigated said statement and had convinced themselves that said statement was true, and upon such representation being made by the said defendants to the plaintiff, the plaintiff furnished said engine and separator to said Anderson, Riley, and Douglass; that said statement of Anderson was wholly untrue, and that he had no land at the time of his purchase, and was not

worth anything over and above his exemptions and liabilities, and his statement of his ability to pay, as furnished by the said Anderson through the defendants to the plaintiff, was wholly untrue; that said defendants never investigated the truth of the statement so made, and never made an inquiry or examination of the records, as they were bound to do under said contract; that said plaintiff has been unable to collect any part of said notes so given, except $250, and has been unable to collect by foreclosure of the chattel mortgage given at the time for certain live stock over the sum of $277.59; that said balance due on said notes cannot be collected from said Anderson, Riley and Douglass by reason of their insolvency, they having no property out of which anything can be made, and they have at all times and do now refuse to pay anything further upon said notes.

"Wherefore, by reason of the failure of said defendants to investigate the statement of said Anderson, as heretofore stated, and as they were bound under said contract so to do, an action has accrued to the plaintiff to recover from said defendants the amount not collected on the notes, amounting to $1,237.41, together with interest on said uncollected amount amounting to $293.82; and also the sum of $210.36, as set forth in the first cause of action in this petition, amounting in all to the sum of $1,741.59, for which said sum the plaintiff demands judgment against said defendants, together with interest at the rate of 7 per cent. per annum from the 1st day of January, 1887, and the costs of this suit, and for such other and further relief as may be deemed by the court just and equitable."

The contract referred to provided that the agent should receive 17 per cent. as commission upon all sales made, but it provided "that no commission shall be allowed or paid said agents on any article taken back, or any sale to irresponsible parties, or on any portion of such sales as shall be uncollectible." In the fifth paragraph, the defendants agreed:—

"To attend to the collection of notes taken for machinery, without extra charge; that the signatures of all notes, orders and property statements shall be genuine, and that the makers of all notes which may be sent to the parties of the first part in pursuance of this agreement shall at the time such notes are signed be parties of well-known responsibility and good reputation for veracity and the prompt payment of their debts

in the localities where they reside, and that the notes so sent shall be accompanied by the order containing the property statements of the makers and chattel mortgages or deeds of trust."

In the ninth paragraph, it was provided that the defendants should take and forward written orders for all machinery contracted for, and that they should also take statements of the ability of the persons to whom sales were made to make payments; and it further provided, that the agent—

"Will not forward such orders to the factory for approval until he has thoroughly convinced himself that the statements made are based upon a fair valuation of the property at the time such statement is made, either by examination of the records, or by making full inquiry of the residents in the locality of the intended purchaser, or by any other means that will assure him of the correctness of the statement made."

It further provided, that the defendants should receive commission out of cash payments only; and where the sale was made partly on time they should retain commission only on such portion as was paid in cash; and the remaining commission was to be paid as the notes were paid. Another provision of the contract was, that the defendants agreed to be accountable to and to reimburse the plaintiff for any losses or expenses resulting from any deviation from the agreement. Each of two of the defendants filed general demurrers, alleging that the foregoing petition did not state facts sufficient to constitute a cause of action against them. The court sustained the demurrers, and awarded judgment in their favor. The plaintiff excepted to the ruling and brings the case here for review.

*Elliott & Woods*, for plaintiff in error:

The district court erred in sustaining the demurrer of defendants to the first cause of action set forth in plaintiff's petition. As to the sustaining of demurrer to second cause of action, no argument was made, no authorities submitted, no opinion rendered, and we never did know upon what theory such demurrer was sustained. About all we can do is to as-

severate that our petition is good. See 1 Am. & Eng. Encyc. of Law, 369, 371, and cases cited; 2 id. 575; *Shepherd v. Field,* 70 Ill. 438; Story, Agency, § 183; *Cory v. Wirth,* 21 Kas. 10.

*W. W. Schwinn,* and *A. E. Parker,* for defendants in error:

The demurrer to plaintiff's petition was properly sustained as to both counts, upon the ground that the petition shows on its face that plaintiff's cause of action, if any it had, was barred by the two-years statute of limitation at the time suit was brought in the court below. So far as the second count is concerned, the petition shows on its face that the action was barred, as there is no allegation of concealment or want of knowledge. Civil Code, § 18, subdiv. 3; *Losch v. Pickett,* 36 Kas. 216; *Young v. Whittenhall,* 15 id. 579; *Ryus v. Gruble,* 31 id. 767.

The first cause of action is based solely on the allegation that plaintiff paid defendants $300.05 as a commission for making this sale, on the representation of the defendants, made at the time, that the notes taken for the property were good, and would be paid at maturity. This payment was made more than two years before the suit was commenced, and, as there is nothing to take the case out of the statute of limitations, this cause of action appears on the face of the petition to have been barred. See authorities above cited.

It cannot be claimed that plaintiff is entitled to receive the difference between the amount of commissions provided for in the contract and the amount actually paid, by reason of any stipulation in the contract itself, for several reasons: (1) The written contract does not provide for the return to plaintiff of any commissions that may already be paid. (2) The petition shows that the written contract was subsequently modified, or these commissions would not have been paid at all until the machinery was paid for. (3) The payment was a voluntary one, and cannot be recovered unless made through mistake or the fraud of defendants. If the petition states enough facts to show that the plaintiff was induced to modify

the written contract with defendants, to the extent of paying the commission in advance, by reason of false or fraudulent statements or representations made by the defendants, then plaintiff's action is not based on its contract, but sounds in tort, and is barred.

The opinion of the court was delivered by

JOHNSTON, J.: By the first count of the petition, the plaintiff seeks to recover the unearned portion of the commission paid by it to its agents, and no reason is seen why the facts alleged do not warrant a recovery. The amount of the commission which the agents should receive was fixed by the contract, and no commission was to be paid on any sales made by the agents to irresponsible parties, nor where the debts for which machinery was sold were uncollectible. The plaintiff alleges that certain machinery was sold to certain parties on credit, for $1,765, and that the total amount which the plaintiff had been able to collect from the parties and upon the security which had been given by them was $527.59. The commission on the amount for which the machinery was sold was $300.05, while the commission upon the amount collected was only $89.69. It is alleged that the plaintiff was unable to collect any more than $527.59, for the reason that the debtors were and are insolvent. Under the contract, no commissions were due or payable for that part of the selling price which could not be collected, and as $1,237.41 of the selling price of the machinery in question was uncollectible, no commission was earned thereon, and the defendants had no right to retain the commission on that amount. It is true that another provision of the contract provided that the defendants should receive commissions out of cash payments only, but that is coupled with the further provision that the agents should retain commissions only on such payments as should be made.

It is contended by the defendants that, as the plaintiff had advanced the commission before the payments were made, it departed from the contract, and cannot now recover such

commission back. This is met by the allegation that the defendants represented to the plaintiff that the notes were good and would be paid at maturity, and, relying upon their statements, the plaintiff paid the commission in full. From the petition, it does not appear that any new contract was made between the parties, but that the commissions were advanced upon the schedule of rates fixed by the written contract, and upon the representation and assumption that the sales had been made to responsible parties, and that the paper would be paid at maturity. The fact that the commissions were advanced to or retained by the defendants before it was developed that their representations were untrue, or that a portion of the debt could not be collected, gives them no right to retain the unearned portion of the commission. According to the averments of the petition, it was agreed that they should not receive or retain a greater sum as commission than 17 per cent. of the amount which was or could be collected on the sales made; and it was further provided, that they would reimburse the plaintiff for any losses resulting from any deviation from their agreement. As the commissions were advanced upon the representation of the defendants that the notes taken by them were good and collectible, the advance of commission can hardly be treated as a voluntary payment. The allegations of the petition are not as full and definite as they should be, but, assuming that the facts alleged are true, as we must, we think they are

1. Agents—commissions overpaid—recovery —limitation of action.

sufficient to show that the plaintiff is entitled to recover the difference between the commission which was paid and the amount actually earned by the defendants. It is contended that the action sounds in tort, and is therefore barred by the two-years statute of limitations. From what has been stated, it is clear that the action arises on contract, and does not fall within that limitation.

The allegations of the second count are set out at length in the statement, and from it and the exhibits it appears that the defendants agreed to take orders for machinery and for-

ward the same to the plaintiff for approval. Blanks were to be furnished for that purpose, and in connection with each order they were to take and forward a statement of the financial ability of the purchasers to meet their obligations. These statements were to be invariably filled out where sales were made on credit, and no orders were to be forwarded to the plaintiff for approval until the agents had thoroughly convinced themselves that the statements of property were based on a fair valuation; and they were required, either by examination of the records or by making full inquiry of residents in the locality of the intended purchaser, or by other means, to ascertain and assure themselves as to the correctness of the statement made. It was further provided, that the notes taken should be from parties of well-known responsibility and good reputation for veracity and prompt payment of debts. Now, it is alleged that the parties to whom the sale was made in this instance were insolvent. One of them, Jonathan Anderson, made a property statement that he owned a certain quarter section of land worth $2,000, free from all incumbrances, except $500, and that he owned $2,000 worth of personal property over and above his indebtedness. It is averred that at that time Anderson had no land, and that his statement of his property and his ability to pay, taken by the defendants and forwarded to the plaintiff, was wholly untrue. It is then averred that the defendants never made inquiry as to the truth of the statement which they had taken and forwarded, and never made any examination of the record, as the contract required. These averments, fairly interpreted, show a liability of defendants for the losses occasioned by their noncompliance with the contract and their neglect.

The law requires fidelity and reasonable care and diligence on the part of agents in the transaction of business for their principals. In the absence of any specific provisions as to the care of agents in ascertaining the responsibility of persons to whom sales were made on credit, they would be held to a careful examination of the credit of a proposed purchaser and to the exercise of reasonable care in ascertaining

50 — 50 KAS.

from the usual sources of information as to his ability to meet payments when they were to be made. In this case care and diligence were especially enjoined upon the agents, and while they did not become guarantors of the responsibility of the persons to whom sales were made, they bound themselves to a high degree of care and diligence in ascertaining the financial standing and ability of the persons from whom orders were taken. The property statement made by the proposed purchaser was treated as an important feature of a proposal to purchase machinery. It was to be invariably filled out and forwarded with the order. The agents were required to thoroughly convince themselves that the valuation put upon the property by the proposed purchaser was fair, and either by examination of the record or full inquiry of residents in the locality of the intended purchaser, or by other means, they were to assure themselves of the correctness of the statement made. The statement thus made, and attested and sanctioned by the agents, was made the basis upon which the principal determined whether a sale should be made. It is averred that the plaintiff relied upon the performance of these

2. Negligent agent—loss—liability to principal.

duties by the agents, and if they failed to exercise the care and diligence required of them they are liable to the plaintiff for the loss sustained by reason of their neglect. It is said by the defendants that ample security was taken, upon which the plaintiff relied, and that the loss was occasioned by its own neglect. These are matters to be set up in an answer, and which do not appear from the allegations of the petition. Taking the facts alleged in the petition to be true, we think it stated a cause of action against the defendants, and that the general demurrer should have been overruled.

The judgment of the district court will be reversed, and the cause remanded for another trial.

All the Justices concurring.