### THE WESTERN UNION COLD STORAGE COMPANY
*v.*
### THE WINONA PRODUCE COMPANY.

*Opinion filed June 19, 1902.*

1. BROKERS—*duty of broker to keep principal informed of facts relating to consignment.* The law enjoins upon brokers or commission men the duty of keeping the principal informed of all facts and circumstances relating to the consignment which may make it necessary for the principal to take steps to protect his interests.

2. SAME—*duty of broker to communicate name of purchaser to principal.* If information as to the name of a purchaser is necessary in order to enable the principal to act with reference to the sale it is the duty of the broker to give such information, and he is not excused by the existence of a custom to the contrary.

3. SAME—*when usages and customs are not valid.* No usage or custom among brokers or agents is valid, as against the principal, if it conflicts with the terms of any agreement between the parties, or with the fundamental rules of law defining the rights of those occupying the relation of principal and agent.

4. SAME—*when a storage company is liable as a commission merchant.* If a cold storage company offers its services in making sales of the stored property in order to secure business, making no specific charge except for storage, it is nevertheless to be regarded as acting for compensation, and becomes liable as a factor for neglect of duty, as though commissions were charged for making the sales.

*Cold Storage Co.* v. *Winona Produce Co.* 94 Ill. App. 618, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES G. NEELY, Judge, presiding.

DEFREES, BRACE & RITTER, for appellant.

CHURCH, MCMURDY & SHERMAN, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was an action in assumpsit brought by the appellee company, against the appellant company, in the circuit court of Cook county, in which, by agreement of the parties, the appellant, without specific pleadings, interposed a counter-claim or set-off and asked judgment

thereon.   The appellee, the plaintiff, claimed a balance
in its favor of $1369.30 and interest, and the appellant
company claimed a balance in its favor of $1410.83.   To
facilitate the hearing and avoid the introduction of evi-
dence as to many of the material facts, a stipulation of
facts was prepared and signed by the parties, hearing by
jury was waived, and the cause was heard and submitted
to the court and judgment entered in favor of the appel-
lee company in the sum of $744.09.   The Appellate Court
for the First District affirmed the judgment of the circuit
court, and this is a further appeal to this court to reverse
the judgment of the Appellate Court.   The appellee com-
pany has also filed cross-errors.

The first assignment of error for consideration is
whether the trial court erred in refusing to permit the
appellant company to introduce evidence to show a gen-
eral and well established custom existed among brokers,
factors and commission merchants in Chicago, including
cold storage warehousemen when acting as brokers and
factors, not to include in the statement of the report of
the sale of the property of the principal the name of the
person who became the buyer thereof.   A custom or usage
among such brokers, factors or warehousemen could not
be interposed against their principals if inconsistent with
the terms of any agreement between the parties or in op-
position to any principle of general policy or against
any established principle of law.   (*Bissell* v. *Ryan*, 23 Ill.
517; 27 Am. & Eng. Ency. of Law,—1st ed.—786-789.)   It
is enjoined by law as a duty owing by a factor or broker
to keep his principal informed of all facts and circum-
stances relating to the consignment which may make it
necessary for the principal to take steps for the protec-
tion of his interests.   (12 Am. & Eng. Ency. of Law,—
2d ed.—654.)   "It is the duty of a factor to inform his
principal of every fact in relation to the transaction
which comes to his knowledge, and especially to notify
him of any terms of the sale or conditions imperiling the

contract." (Mechem on Agency, 1012.) A factor or commission merchant must exercise all reasonable diligence to ascertain the pecuniary solvency of the purchaser of the property of the principal, except where the sale is concluded by payment of cash, (*Foster* v. *Waller*, 75 Ill. 464,) and to keep the principal advised as to the pecuniary ability of the purchaser whenever the interests of the principal would be advanced by such knowledge. The law has no hard and fast rule that the principal shall be notified of the name of the purchaser, but if such information is necessary or become necessary in order to enable the principal to act with reference to the sale, the duty at once arises and becomes obligatory on the agent. In respect of these duties so enjoined by law upon such agents as factors and brokers and commission merchants, it was not within their power to adopt usages and customs that will relieve from their performance. No usage or custom among agents is valid if it conflicts with the fundamental rules of law defining the rights of those who occupy the relation of principal and agent.

We may now consider the facts of the case so far as necessary to enable us to determine as to the propriety of the ruling of the trial judge in declining to receive evidence of the usage and custom in question.

The appellee is a corporation having its home and place of business in Winona, Minnesota. The appellant company is an Illinois corporation engaged in supplying cold storage for eggs and other commodities to its customers, and in selling for such customers the commodities stored with it. No additional compensation was charged by the storage company for making sales of goods on storage, but the services of the company, as a factor or commission merchant in making such sales, were offered and rendered as an inducement to secure the storage of commodities. The duties and obligations of the appellant company are unaffected by the fact no additional charge above the charges for storage was made

for services in making sales. In making sales they are to be regarded as acting for compensation, and as liable as factors and commission merchants for the neglect or violation of duties, the same as if a specific sum had been charged as commissions for making sales.

In the months of May and June, 1895, the appellee company placed on storage with the appellant company, and for sale by it, three car-loads of eggs. On the 7th day of January, 1896, appellant was offered fourteen and one-fourth cents per dozen for the eggs and so notified the appellee company by telegram. The offer was accepted. On the same day appellant wrote to appellee that as instructed by its telegram it (appellant) had sold the three cars of eggs at fourteen and one-fourth cents, case count, in the house, buyer to assume storage charges after January 8, but did not give the name of the purchaser. The sale was made on January 7, which fell on Tuesday, and by the custom of the trade in Chicago the purchaser had until the following Monday (13th inst.) to consummate the sale by removing the eggs and paying the purchase money. On the 13th the appellee wrote appellant asking for an accounting. On the 14th the appellant wrote that the stock had not yet been removed from the house, and that as soon as it was, a statement would be made up and check sent. On the 15th appellee again wrote demanding an accounting. On the 16th appellant wrote that as to the three cars it simply acted as agent for appellee and made the sale to the best advantage; that if appellee was dissatisfied it would endeavor to have the deal canceled; if not, it would try to get the purchaser to move the eggs, and that as soon as he had done so and paid for same the amount would be credited to appellee's account. On the 17th appellee wrote stating that the sale was a cash transaction; that it looked to appellant for the consummation of the sale and did not desire to have the eggs back, and that it must have an immediate statement of account. On the

18th appellant wrote that it had billed the eggs to the purchaser; that the same had not yet been moved from the house or paid for, and that as soon as this was done it would make up a statement, and that until this was done it could not make up the same.  On the 27th appellant advised appellee that it had been endeavoring to get the purchaser of the eggs to move the same and pay for them or put up a margin; that he was in no position to do so and claims he cannot move them without loss; that it was anxious to get the eggs out of the house and have the advances paid up, and would like to hear any suggestions in the matter, and that, as already written, it had simply acted in the transaction as agent for appellee, but did not as yet disclose the name of the purchaser of the eggs.  On the 28th appellee wrote claiming that, so far as it was concerned, the sale was a consummated one; that it regarded it as a sale and delivery for cash, and saw no reason why appellant should not account for the proceeds upon that theory.  On the 29th appellant wrote disclaiming any such liability, stating that it did not purchase the eggs, but simply sold them as agent for appellee; that ever since the sale it had been trying to get the purchaser to move the eggs and pay for the same or put up a margin; that it could not get him to do so; that it simply acted as agent for appellee, and would do all it could to get the purchaser to take and pay for the eggs.  On the 30th appellee wrote that the sale having been reported as made, the eggs were the buyer's property, and that if appellant chose to give the buyer time on them it did so at its own risk and without the consent of appellee; that it wanted the matter settled, and demanded a statement and remittance.  On February 1 appellant wrote stating that it did not give the buyer time; that it billed the eggs and asked for the money, which was not paid, and that it had been unable to make a settlement with the purchaser; that it was not interested in the matter further than as agent for

appellee, and did not hold itself responsible in any way. On the 4th appellee wrote that this was not satisfactory; that there must be a settlement at once or it would place its claims in the hands of an attorney; that an agent would have given his employer the name of the buyer in order that his responsibility might be looked up, and would in other things have exercised some diligence. On the 7th appellant wrote enclosing a copy of the bill of sale or invoice of the eggs, again stating that it had asked the purchaser for payment and that payment was not made; that it had advised appellee promptly that the stock was still in the house and unpaid for; that it acted simply as agent for appellee and would like to receive instructions. Accompanying this letter was a copy of the invoice, dated January 8, made out against the R. A. Foster Company, and is for 36,000 dozen eggs at fourteen and one-fourth cents per dozen, amounting to $5130. This was the first disclosure of the name of the purchaser.

The R. A. Foster Company, the purchaser of the eggs, was a rival in business of the appellee company, and had its home and place of business in Winona, which, as before said, was the home and place of business of the appellee company. The appellant company knew the Foster Company and the appellee company were residents of the same town, that their relations were unfriendly, and knew that the credit of the Foster Company was not good. The appellant company was not willing to deliver the eggs to the Foster Company except upon payment in cash, and so advised the Foster Company. It knew the Foster Company was not buying on its own account, but to re-sell if it could make a profit, and that its ability to take and pay for the eggs depended upon the consummation of a re-sale of them. These facts were all within the knowledge of the appellant company when the sale was made, and, of course, during all of the time of the correspondence between the appellant company and the appellee company, yet it did not, until the expi-

ration of a month after the day of sale, make known to the appellee company that it was the Foster Company who had contracted to purchase the eggs. This information reached the appellee company by means of a letter written on the 7th of February by the appellant company, which, in the due course of the mail, would arrive at Winona on the 8th. This was the first time the appellant company had given the appellee company the information necessary to enable it to determine the course of action best calculated to protect its interests. The price of eggs in the city of Chicago had fallen, and then ranged from nine to ten cents per dozen. The secretary and treasurer of the appellant company was introduced by it for the purpose of establishing the price of eggs during the period of time here involved. He testified that he knew the market price of eggs on the dates hereinafter given, from invoices on direct sales made,—actual sales made under his supervision,—and stated such prices as follows: January 7, fourteen to fifteen and one-half cents per dozen; January 9, fourteen to sixteen and one-half cents; January 14, fourteen and one-half to fifteen cents; January 16, fourteen and one-half to sixteen cents; January 18, fourteen and one-half to fifteen and one-half cents; January 21, fourteen to fourteen and one-half cents; January 24, thirteen to fifteen and one-half cents; January 30, thirteen to fourteen and one-half cents.

If the appellant company, after the failure of the Foster Company to take the eggs on Monday, January 13,—the day when the sale to it should have been consummated,—had, at any time during the month of January, advised the appellee company that the Foster Company was the company who had contracted to purchase the eggs, and communicated to the appellee company the facts within its knowledge as to the financial inability of the Foster Company to complete its contract, the appellee company could have ordered a re-sale of the eggs, and such re-sale could have been made, as appears from

the evidence of the said secretary and treasurer of the appellant company, at the same price per dozen as the Foster Company had contracted to pay. It therefore, under the circumstances, became and was the duty of the appellant company to notify the appellee company at once, on the failure of the Foster Company to take and pay for the eggs on Monday, January 13, that the Foster Company was the purchaser, and to inform the appellee company otherwise of the facts shown to be in the knowledge of the appellant company with reference to the lack of ability of the Foster Company to perform its contract. The knowledge of the identity of the purchaser; that the Foster Company was not deemed worthy of credit by the appellant company; that the Foster Company could only take and pay for the eggs in case it could succeed in negotiating a sale of them to other parties, was essential to be known to the appellee company in order that it might determine as to the measures proper to be taken for the advancement and preservation of its interests. No usage or custom in force among factors, brokers or commission merchants in Chicago could be allowed to have operation to relieve the appellant company of the plain duty thus devolving upon it by the principles of law relative to the duties and obligations of principals and agents. The court did not err in refusing to admit proof of the custom and usage in question.

It is next assigned as for error that the court refused to hold as correct expositions of the law applicable to the contention, propositions Nos. 1, 4, 9, 10, 11, 12, 13, 14, 15, 18 and 19. No. 1 is as follows:

"The court holds, as a matter of law, that upon the admitted facts in this cause the defendant is entitled to recover a judgment against the plaintiff in a sum equal to $1410.83, with interest at the rate of seven per cent thereon from March 21, 1896, to date of said judgment."

It is conceded in the stipulation of facts entered into by the parties, that the appellee company was indebted

to the appellant company in the sum of $1410.83 and interest, as mentioned in the proposition, for moneys advanced upon the eggs consigned by appellee. It follows, however, from what we have said in disposing of the question of the admissibility of the evidence as to the usage and custom among brokers and factors in Chicago not to give information as to the names of the purchasers, that liability existed against the appellant company to respond to the appellee company in damages in some amount on account of the loss inflicted on the appellee company by the failure and negligence of the appellant company to furnish the appellee company the information with reference to the sale of the eggs to the Foster Company, hence proposition No. 1 was properly refused.

Propositions Nos. 4 and 9 are as follows:

"The court holds, as a matter of law, that if the defendant advised the plaintiff that it had an offer for the eggs on storage with it, and if the plaintiff directed the defendant to accept said offer, and if the defendant advised the plaintiff that it had sold said eggs in accordance therewith, and if the purchaser failed to consummate said sale or to pay the purchase money for said eggs or remove the same from the defendant's warehouse, the defendant is not liable to the plaintiff for any damages on account of said transaction, if, within a reasonable time after said transaction, the defendant advised the plaintiff that said sale had not been consummated and that said eggs had not been delivered and that the purchase price thereof had not been paid."

"The court holds, as a matter of law, that it was the duty of the plaintiff, within a reasonable time after having been advised that the sale to the Foster Company had not been consummated, to take steps to protect itself against loss on account thereof and to authorize and direct the defendant to re-sell the eggs at the market price, and the only damage which the plaintiff is entitled to recover on account of said transaction is such loss as

it would have suffered if it had ordered and directed a re-sale of said eggs within a reasonable time after being so advised."

As we have before seen, the appellee company was entitled to receive from the appellant company other and further information possessed by it with reference to the sale of the eggs to the Fester Company than that referred to in propositions 4 and 9. The information referred to in proposition No. 4 as having been given by the appellant company to the appellee company was not sufficient to relieve the appellant company from liability, as stated in the proposition. Nor did the information conveyed by the appellant company to the appellee company relative to the sale of the eggs by the appellant company to the Foster Company, as asked to be held in proposition No. 9, charge it upon the appellee company, as a duty, to take measures to protect itself and determine whether it would order a re-sale of the eggs or not. The facts which would have charged the appellee company with the adoption of such course as a duty were not, as we have before seen, communicated by it to appellee. Propositions 4 and 9 were correctly refused.

The complaint that propositions Nos. 10, 11, 12, 13, 14 and 15 were improperly refused, and the cross-assignment of error that the court erred in holding proposition No. 16 to be correct, will be considered together.

Proposition No. 16 is as follows:

"The court holds, as a matter of law, that the letter of the defendant to the plaintiff dated February 7, 1896, was sufficient notice to the plaintiff that the sale to the Foster Company has not been consummated, and that it thereupon became and was the duty of the plaintiff, within a reasonable time after receipt of said letter, to take steps to protect itself against loss on account of said transaction."

Propositions Nos. 10, 11, 12, 13, 14 and 15 were identical with proposition No. 16, save that in No. 10 the letter

referred to as constituting sufficient notice to the appellee company with relation to the sale of the eggs to the Foster Company and as operating to make it the duty of the appellee company to take action with reference to such sale, was the letter written by the appellant company to the appellee company on January 14, 1896, and in proposition No. 11 the letter referred to was that under date January 16, and in proposition No. 12 the letter under date January 18, and in proposition No. 13 the letter bearing date January 27, and in proposition No. 14 the letter dated January 29, and in proposition No. 15 the letter of February 1, 1896. In none of the letters referred to in any of these propositions which were refused did the appellant company disclose to the appellee company that the Foster Company was the purchaser of the eggs, or the other facts within its knowledge hereinbefore referred to, bearing upon the inability of the Foster Company to consummate the contract. As we have hereinbefore said, we think the law charged upon the appellant company the duty to make such disclosures to the appellee company, and that because of its failure to do so a liability arose against the appellant company to answer in damages to the appellee company. The court correctly ruled the propositions should not be held as correct statements of the law applicable to the case.

We think the court erred in holding proposition No. 16 to be correct. We do not regard the letter written by the appellant company to the appellee company under date of February 7, 1896, as constituting compliance on the part of the appellant company with the duty enjoined upon it by law to seasonably advise the appellee company of all the facts and circumstances relating to the sale of the eggs to the Foster Company which were required to enable the appellee company to take the necessary steps to protect and secure its interests which were involved in the transaction between the appellant company and the Foster Company. The appellee com-

pany was entitled to know promptly after the Foster Company had failed to take the eggs on the 13th day of January and pay for the same, that it was the Foster Company who had contracted to buy the eggs, and to know all the facts shown to be within the knowledge of the appellant company relative to the inability of the Foster Company to consummate and comply with its contract. On the 14th day of January the appellant company wrote the appellee company a letter in response to one asking for an accounting and settlement, saying, in substance, that the eggs had not been removed from the warehouse, and that as soon as that was done a statement would be made up and a check sent to balance same. The duty devolved upon the appellant company at the time of writing this letter to disclose not only the facts made known in the letter, but also the other facts known to it that were necessary to be known by the appellee company for its proper guidance, viz., that the Foster Company, of Winona, had contracted to purchase the eggs, together with all other facts touching the financial ability of the Foster Company to conclude the contract by making payment of the price of the eggs, hereinbefore referred to as being within the knowledge of the appellant company.

We think the court erred in refusing to hold propositions presented by the appellee in substance to the effect that the appellant was liable to account to the appellee for the eggs at fourteen and one-fourth cents per dozen.

The appellant company had, by way of a loan, advanced to the appellee company $1200 on each of the three car-loads of eggs, taking its notes therefor, and warehouse receipts issued by the appellant company to the appellee company for the eggs were deposited with the appellant company as security. The appellant company hypothecated these notes and warehouse receipts in order to secure funds, and the eggs were sold by the holders of such warehouse receipts because of non-

payment of the notes.   Had the appellee company been fairly and fully advised of the situation it could have protected itself by ordering a re-sale of the eggs, and it appears from actual transactions and sales made of eggs by the appellant company such re-sale might have been effected at any time up to and including January 30 without loss to any one.   The letters from the appellee company to the appellant company were all to the effect that it was its desire and insistence that the eggs should be accounted for to it at the contract price of fourteen and one-fourth cents per dozen.   This could have been accomplished had a re-sale been made on the 16th, 17th or 18th of January, and within either of these dates a re-sale could have been made on the order of the appellee company, and it must be presumed it would have so ordered the re-sale (for the price it demanded could then have been obtained) had the appellant company's letter of the 14th, which, as appears from the stipulation of the parties, would have reached the appellee company by the 15th, contained the information which, as before seen, it was the duty of the appellant company to then communicate to the appellee company.   The appellant company should therefore be held to account to the appellee company for the eggs at the rate of fourteen and one-fourth cents per dozen on the 18th day of January, to adopt the date most favorable to the appellant company.

The parties stipulated as follows:   "That on account of sundry other dealings between the parties there was due to the plaintiff from the defendant on March 21, 1896, a balance of $647.13, leaving a net balance due defendant on said date, on the basis of said sales, of $1410.83; that the reasonable value of the storage of said eggs after January 1, 1896, and the amount charged by the defendant therefor, was ten cents per month per case.   It is agreed, in case it should be held that the defendant is accountable to plaintiff, by reason or on account of the transactions with the Foster Company described in the

correspondence and bill of sale above set forth, for the amount which would have been realized for said eggs at the price at which they were reported sold in defendant's letter of January 7, 1896, and further shown in said bill of sale, viz., $5130, then the defendant shall have and be allowed a set-off against the amount which in such case would be due the plaintiff for the full principal and interest of said three notes to January 8, 1896, and also for storage and other expenses on said eggs to that date, and that the balance which will be due the plaintiff over and above such set-offs (including the above mentioned balance of $647.13) will be the sum of $1369.30, with interest from January 8, 1896, for which last mentioned sum the plaintiff will be entitled to judgment."

As we fix upon the 18th day of January as the day for the accounting, instead of the 7th, as mentioned in the stipulation, the amount mentioned in the stipulation (of $1369.30) as being the amount for which (with interest from January 8, 1896,) a judgment should be entered for the plaintiff must be reduced in the amount of the interest which would accrue upon the notes of the appellee company from the 8th to the 18th day of January, which we find to be $7, and also in the amount of the storage charges on the eggs for the same time, which we find to be $40, making a total deduction of $47 from said amount mentioned in the stipulation. This will reduce the amount to $1322.30, to which must be added interest at the rate of five per cent per annum from January 8, 1896, to this date, amounting to $424.24, making the total sum $1746.54 which the appellee company is entitled to recover from the appellant company.

The judgment of the Appellate Court and that of the circuit court are each reversed, and judgment will be entered in this court in favor of the appellee company and against the appellant company in said sum of $1746.54, together with costs.

*Reversed, and judgment entered in this court.*