Robert Entwhistle v. Anna C. Henke, et al.

Gen. No. 4,273.

1. STATUTE OF FRAUDS—*when contract within.* A contract by which a person claims a right to enter upon and to take and remove ore from land, subject only to the delivery of a certain share thereof to the owner by way of royalty, is a contract conferring an interest in land and must, by virtue of the Statute of Frauds, be in writing in order to bind.

2. PAROL LICENSE—*when, may be revoked.* A parol license respecting land, notwithstanding there may have been an intention to grant a continuing right, is revocable at will, and a conveyance of the fee of such land operates as such a revocation regardless of the motives which may have actuated the conveyance.

3. CUSTOM—*when, does not bind.* A custom will not be permitted to prevail against or overcome a settled rule of law.

4. ABSTRACT—*effect of failure to file complete.* Where an appellant abstracts his own testimony but does not abstract that of his opponent, such conduct may be deemed an abandonment of contentions which are based upon conflicting evidence.

5. ADDITIONAL ABSTRACT—*when appellant may be taxed with cost of.* Where the abstract filed by the appellant omits the testimony of the appellee, the cost of an additional abstract filed by such appellee is properly to be taxed to the appellant.

6. FINDING—*when, will not be disturbed.* The finding of a chancellor upon matters of conflicting testimony will not be disturbed.

Proceeding to enjoin, among other things, the dispossession of complainant from certain mine property. Appeal from the Circuit Court of Jo Daviess County; the Hon. JAMES S. BAUME, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed April 14, 1904.

**Statement by the Court.** Robert Entwhistle filed a bill in equity in the court below against Anna C. Henke and Mary K. DeVry. Defendants answered, and upon a hearing the bill was dismissed for want of equity. This is an appeal by complainant from that decree.

The bill averred that in 1891, and before and since, Anna C. Henke owned certain land in Jo Daviess County; that David Sheean of Galena was attorney for her guardian during her minority and was her agent for about fifteen years; that said real estate consists of rocky bluffs and

Entwhistle v. Henke.

hills along the Mississippi River, and is used almost exclusively for lead mining; that complainant made an agreement with Miss Henke through her said agent, whereby complainant was to mine for lead and other ores in said land within a strip 100 feet wide and 2,000 feet long specifically described in the bill, and pay a royalty of one-seventh of all ore raised in dry ground and one-ninth of all raised in wet ground; that he was to do this in a minerlike manner, and according to the mining customs and usages of that mining district; that said agent told complainant Miss Henke would not enter into written contracts with miners to mine her land, but that a verbal letting was better for complainant than one in writing as it was less restrictive and binding and less susceptible to annulment for violation of covenants; that a verbal letting was safe under the mining custom of that district, and complainant would be protected in his rights under a verbal letting; and the bill averred that by said long established customs a verbal letting of a mine by an owner is valid as long as the miner works in a minerlike manner a reasonable time each year, and if such miner discovers ore in paying quantities he is allowed to continue working such range till the ore is exhausted, and the owner may not terminate the letting while ore is being raised in paying quantities or the miner continues prospecting a reasonable time each year.

The bill further averred that complainant was an experienced miner and believed said custom would protect him under a verbal letting; that said agent assured complainant he would be as fully protected under a verbal as a written letting, while he, said Sheean, acted as such agent; that complainant relied on said statements and believed he could work in said land as long as he pleased, if he did it in a minerlike manner and paid the royalties; that he began mining in said land in 1891, and raised more or less lead ore, and paid the royalties, and Miss Henke received them; that about June, 1900, she caused notice to be published that all mining leases upon her lands had been cancelled; that said agent told complainant his letting was not in-

cluded in said notice, but to continue mining under the former agreements and his rights would be protected, and he did so continue; that about February 16, 1901, he renewed his former agreement, and said agent again told him Miss Henke would not execute any written letting of mining lands, but his rights would be as fully protected under a verbal as a written letting, and in reliance thereon he resumed work, and so continued till served with notice to deliver possession to Mary K. DeVry; that on July 5, 1901, Miss Henke conveyed all her real estate to Mary K. DeVry, and that said deed was fraudulent and given to aid in repudiating the verbal letting to complainant and fraudulently to evict complainant from said mines and get the benefit of complainant's labor and money expended in said mines under said letting, and the ore he had uncovered and discovered, without compensation; and that Miss DeVry sued complainant in forcible detainer and obtained final judgment against him.

The bill set out in detail the labor complainant had performed and the money he had expended in driving a level through rock in working said mine, and alleged that his work had lowered the water in defendant's adjacent lands, and drained and thereby permanently improved them; that when evicted he had just discovered a valuable vein of lead and zinc; and that he had driven cross-cuts and drifts which increased the value of the lands. The prayer of the bill was that the deed to Miss DeVry be set aside as to complainant; that defendants be enjoined from taking possession of said mines under said judgment; that complainant be put in possession of said mines with the right to work therein as under said verbal letting; and to avail himself of the time, labor and money he had expended therein; that defendants be restrained from terminating said verbal letting; or, if that relief be refused, that defendants be required to compensate complainant for his time, labor and money, expended in working and developing said mines, and for the discovered and uncovered ore remaining in said mines, and for all improvements by complainant to said

mines and defendant's other lands, and for damages sustained by complainant by the revocation of said verbal letting.

The answer specifically denied some allegations of the bill, and averred defendants were not informed as to others. It set up the Statute of Frauds as a defense.   It denied that Sheean had any written authority from defendants, and denied he had any authority to give any one any rights in said lands, except such as were revocable at the will of Miss Henke.   It denied that complainant had improved the property, or that what he had done was of any value to it.

W. T. HODSON and F. J. CAMPBELL, for appellant.

M. J. DILLON, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

The subject-matter of this controversy is a vein of lead ore running into lands once owned by Anna C. Henke and now by Mary K. DeVry, which lands complainant asserts the right to enter and to take and remove said vein of ore, subject only to the duty to deliver a certain share thereof to the owner as a royalty.   This is an interest in lands, and by the Statute of Frauds (which is duly set up by defendants in their answer) all contracts concerning it are required to be in writing in order to bind the parties.   Lear v. Choteau, 23 Ill. 39.   Woodward v. Seely, 11 Ill. 157, was a bill in equity to restrain landowners from prosecuting suits against complainants for overflowing the lands of defendants, the bill alleging said overflow was by the license and permission of defendants, under which license complainants had expended large sums of money.   It was held that when a license is coupled with an interest in the land, or is of such a character that the interest could not pass by parol, a writing is essential to the creation of the interest, but that such an interest could not be granted by parol, as it would be in the very teeth of the statute, and it would require but a step further to hold that one may acquire the

title itself by parol. It was held that the license there in question was revocable at the will of the party granting it. Replying to the argument there urged that complainants had expended much money upon the faith of the license which would be lost to complainants by the revocation, the court said : " It makes no difference that the complainants may have acted upon the parol license, and erected valuable buildings which will become worthless in case the license is revoked; before acting so imprudently they should have acquired permission by deed to overflow the land of the defendants. Nor can the complainants call upon a court of equity to enforce the license upon the ground that they have made valuable improvements, and expended their money, relying in good faith upon it." Kampbouse v. Gaffner, 73 Ill. 453, was an action at law relating to the same lands which are involved in the case at bar, and it concerned partly a written lease and partly a parol license to run another crevice or mining range therein, and the infant, Ann Caroline Henke, therein referred to, is Anna C. Henke, defendant herein. It was there held that such a parol license is revocable at the will of the licensor; that a subsequent conveyance works a revocation of the license; and that the incurring of expenditure by the licensee, because of the license, does not make the license less revocable. , This was said to be the rule at law, and the court refused to consider whether a court of equity would give any relief against such a revocation. Tanner v. Volentine, 75 Ill: 624, was an action at law, where defendant relied upon a parol agreement with plaintiff's grantor which permitted defendant to cause water to drip from his roof upon plaintiff's lot. The court said: " This right * * * claimed by appellant is not limited as to time. If good and valid for ten years, it may exist for one hundred years, and, for aught that we can see, for all time to come. According to appellant's theory, then, he has acquired an interest in the land of appellee, by a parol license, which he and his grantees can hold perpetually. The right claimed by appellant cannot with reason be said to be less than an inter-

est in the land. The use to which he appropriates it renders it valueless to appellee. True, appellee has the naked legal title, but for all practical purposes the title to a part of the premises might as well be in appellant, for what advantage can it be for appellee to hold the title, when he is deprived of the enjoyment of the property, and appellant can flood it with water? If then, the parol agreement upon which appellant relies was a mere license, it was revocable and cannot be relied upon as a defense to the action after it was revoked. If, on the other hand, its effect would be to create an interest in the property of appellee, it would be void under the Statute of Frauds." St. Louis National Stock Yards Co. v. Wiggins Ferry Co., 112 Ill. 384, was a suit in equity to enjoin the revocation of a parol license upon the faith of which complainant had expended large sums of money. The license was held revocable at will, and in regard to the effect of the expenditure of money in reliance on the license, the court said if complainant saw proper to enter upon defendant's land and spend money upon a mere parol license, which, as a matter of law, it must be conclusively presumed to have known was revocable at the will of defendant, it was its own folly, and that the case did not differ in principle from any other where the licensee had expended money in connection with his entry upon the land of the licensor, a circumstance which generally occurs. " To say that the license is irrevocable because the thing permitted to be done necessarily involved the expenditure of money, would be going beyond the most extreme views of the subject, and make most licenses irrevocable. The practical effect of such a doctrine would be to make most licenses conveyances of an interest in land by mere estoppel *in pais*. * * * Such a decision would establish the rule that all licenses founded upon a valuable consideration, or necessarily involving the expenditure of money, would be irrevocable, which would practically destroy the distinction between a license and a grant." In Village of Dwight v. Hayes, 150 Ill. 273, a cause in equity, it was held that the fact that the licensee had expended

money or incurred liability because of the oral license, did
not present any obstacle to its revocation, as' the licensee
must be held to have acted with full knowledge of the fact
that the owner had not obligated himself by any binding
act or instrument and was at liberty at any time to recall
his oral consent.    In Lambe v. Manning, 171 Ill. 612, also
in equity, a paper had been executed under seal and attached
to a prior deed.    It granted a privilege of taking gravel
out of lands retained by the grantor.    The court said:
" The instrument created no estate in the land, but simply
a bare authority to the persons named as grantees in the
deed, to enter upon the land and take gravel to be used in
repairing the dam, without which it would have been un-
lawful for them to enter upon the lands of the grantor and
take gravel therefrom.    Such a privilege is known in the
law as a license, and is revocable at the pleasure of the
party making it.    It is not assignable, and is inoperative if
the owner of the land conveys the land to another, and is
revoked by the death either of the licensor or licensee."
Wilmington Water Power Co. v. Evans, 166 Ill. 548; Ra-
gain v. Stout, 182 Ill. 645.    The following language from
Crosdale v. Lanigan, 129 N. Y. 604, 26 Am. St. 551, well ex-
presses the reasons for the rule :    " The courts in this state
have upheld with great steadiness the general rule that a
parol license to do an act on the land of the licensor, while
it justifies anything done by the licensee before revocation,
is, nevertheless, revocable at the option of the licensor, and
this, although the intention was to confer a continuing
right, and money had been expended by the licensee upon
the faith of the license.    This is plainly the rule of the
statute.    It is also, we believe, the rule required by public
policy.    It prevents the burdening of lands with restric-
tions founded upon oral agreements easily misunderstood.
It gives security and certainty to titles, which are most
important to be preserved against defects and qualifications
not founded upon solemn instruments.    The jurisdiction of
courts to enforce oral contracts for the sale of land is
clearly defined and well understood, and is indisputable;
but to change what commenced in a license into an irrevo-

cable right, on the ground of equitable estoppel, is another and quite different matter.   It is far better, we think, that the law requiring interests in land to be evidenced by deeds should be observed, than to leave it to the chancellor to construe an executed license as a grant, depending upon what, in his view, may be equity in the special case."

The rules of law above stated being firmly imbedded in the jurisprudence of this state, it is not necessary to examine the decisions upon which complainant relies where other states have followed a different line of reasoning, further than to call attention to the authorities *pro* and *con* as collected and discussed in the note to Pifer v. Brown, 49 L. R. A. 497.   We regard it as clear that under the decisions in this state the parol license granted Entwhistle by Anna C. Henke or her agent was revocable at her will, and that the conveyance to Mary K. DeVry operated as a revocation.   As the license was revocable it is immaterial what motives caused the conveyance from Miss Henke to Miss DeVry.   Of the alleged custom (which the proof tends to show is not universal in that mining region, and is gradually being abandoned,) it is sufficient to say that its meaning is that the Statute of Frauds shall not be permitted to apply to contracts relating to taking lead ore out of real estate in the region about Galena; and that a custom cannot prevail against or overcome a settled rule of law.   Frith v. Barker, 2 Johns. 327; Bissell v. Ryan, 23 Ill. 566; Western Union Cold Storage Co. v. Winona Produce Co., 197 Ill. 457.

Complainant's tunnel began on the bank of the Mississippi River just above low water, and extended nearly on a level some 2,000 feet, more or less, into the hill.   Complainant claimed this tunnel was a great improvement to the adjacent land as it drained the hill and kept it dry.   At high water this tunnel carried the river water far back into the hill.   Defendants claimed this was not an improvement, but a positive detriment to the land, both for mining and other purposes; that the modern and far more feasible method of land mining is by sinking a shaft from the top of the hill and using a pump to take out any water which may gather in the excavation among the veins of

ore, which is only found in the seams of the rock; and therefore, that if, upon revocation of a verbal license, it were proper to award compensation for permanent improvements by the licensee to the land, yet complainant had created no such improvements there. The record does not disclose whether the chancellor dismissed the bill for want of equity solely on the ground that the parol license was revocable at will, or whether he also found that complainant had not improved the land, and therefore was not entitled to compensation. Complainant (appellant here) has fully abstracted the testimony introduced by him, both in chief and rebuttal, but has failed to abstract the testimony introduced by defendants, covering 155 pages of the record. This must be regarded as an abandonment in this court of any claim that the proof entitled complainant to any compensation, and also of any claim to an estoppel based upon proof of conversations with Miss Henke, of which she gave a different version in her testimony. It is difficult to understand what motive induced complainant to abstract fully the testimony he introduced and wholly omit that introduced by defendants, but by so doing he in effect submitted the case solely upon the question whether complainant's verbal license was revocable at will. Defendants have filed an additional abstract, embodying their testimony, from which it appears that upon the questions whether Miss Henke used any language to complainant which would aid in establishing an equitable estoppel, and whether complainant has in any way improved the property by what he has done therein, the testimony was very conflicting and would not warrant our disturbing the conclusions upon those subjects, formed by the chancellor who saw the witnesses and heard them testify.

But as appellant stated in his opening brief here that he abstracted sufficient evidence to show that the averments of the bill were true, we think appellees were warranted in filing an additional abstract to set out their testimony, and therefore their request that the additional abstract be taxed against appellant is granted.

The decree is affirmed.                    *Affirmed.*