H. L. BROWN & SON, *Appellants*, v. THE ESTATE OF C. FUNCK, *Appellee*.

No. 18,162.

SYLLABUS BY THE COURT.

1. COMMISSION MERCHANT—*Sale of Consigned Goods on Credit —Diligence Required.* In the absence of instructions to the contrary a factor, or commission merchant, to whom goods are consigned may sell them for cash or on a reasonable credit, but if the sale is made on credit he must exercise reasonable diligence to ascertain the solvency and pecuniary responsibility of the purchaser from the usual and available sources of information, and his failure to exercise such diligence will render him liable for the resulting loss.

2. ——— *Same.* The testimony in the case is held to be sufficient to support the finding that the factor did not use due diligence in the transaction herein involved.

3. ——— *Want of Diligence in Making Sales—Burden of Proof.* Ordinarily if a consignor of goods alleges negligence or mis-

conduct of a factor the burden lies on the consignor to prove it, but when a *prima facie* case of negligence of the factor is established the burden is on the latter to show facts relieving him from liability.

Appeal from Lyon district court. Opinion filed May 10, 1913. Affirmed.

*L. B. Kellogg, J. Harvey Frith,* and *Gilbert H. Frith,* all of Emporia, for the appellants; *Martin Connor,* of Chicago, Ill., of counsel.                                    ,

*W. L. Huggins, Henry E. Ganse,* and *Humbert Riddle,* all of Emporia, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was begun by the appellants in the probate court to recover on a claim they held against the estate of C. Funck, deceased. On October 19, 1907, Funck consigned a carload of eggs to the appellants in Chicago and drew a draft for $1700 against the shipment, with bill of lading attached, which was subsequently paid by appellants. On October 23, 1907, appellants sold the eggs to Schotwell-Davis Company, of Chicago, on cash terms, which was payment on the following day. Payment was demanded by appellants on the day after the sale, but they were put off by the purchasers for three or four days and until the following Saturday, and in the meantime the purchasers were allowed to obtain control of the eggs and to ship them to Boston. A financial stringency or panic existed at the time of the transaction, and when appellants called on Schotwell-Davis Company on the next Saturday they found the firm to be insolvent and their property in the hands of creditors. Prior to that time Schotwell-Davis Company had been conducting a large commission business and were generally regarded to. be financially sound. After learning of the insolvency of the firm appellants followed the shipment to Boston and brought a re-

plevin action there in the name of Funck. In that action a bank of Perry, Iowa, intervened and claimed to be the owner of the eggs. Subsequently and without authority from Funck the attorneys employed by appellants compromised with the bank by paying it $1250. It appears that a letter was written to Funck advising him of the bringing of the action of replevin, but no reply was ever received from him. Shortly after the compromise Funck died. Appellants presented their claim against the estate for $1744.02, the difference between the amount of the payments made by them on the eggs together with the expenses of the litigation and the $1250 paid upon the compromise and the amount that they received for the eggs. The claim was filed in the probate court, and after a hearing there the full amount of the claim was allowed. The estate of Funck offered to confess judgment for $129.54, which was the amount of the freight charge on the car of eggs and the excess in the draft drawn by Funck upon appellants. An appeal was taken to the district court, and at the trial there the court withdrew from the consideration of the jury the item of $1250 paid by appellants to the Perry bank by way of compromise. The theory of the court, as appears from its ruling, was that the compromise was unauthorized and that the amount paid under it by appellants furnished no basis for a recovery. The withdrawal of this item left $494.02 of appellants' claim, which consisted of attorneys' fees and costs and expenses of the replevin action, but the jury returned a verdict in favor of appellants for $129.54, the amount for which the estate had offered to confess judgment.

Complaint is made of the result and also of the rulings made during the trial. It is contended by appellants that the evidence was sufficient to sustain an allowance for the full amount of their claim and that the court erred in taking from the jury the item of $1250 which they paid to compromise with the bank.

The ruling of the court respecting the right of appellants to make a binding compromise in that action is no longer material. The finding of the jury of the amount for which judgment was confessed is in effect a finding that appellants failed to exercise the care and diligence required of factors when the sale was made to Schotwell-Davis Company and, therefore, the loss resulting from their negligence must be borne by themselves. If there is testimony which sustains the findings that appellants failed in that respect, and there is no other material error, there must be an affirmance of the judgment. It was the duty of appellants to exercise due diligence and care as to the time and manner of the sale of the eggs consigned to them. They chose to extend a credit for a few days to the purchasers, and whether they exercised the care required by law in respect to the standing and solvency of the purchasers is a question in the case. In the absence of special directions a factor or commission merchant may sell for cash in hand or on a reasonable credit, according to the usage of trade in the market where the goods are sold. If credit is extended he is required to use reasonable diligence to learn the pecuniary responsibility of the purchaser. In *Frick v. Larned,* 50 Kan. 776, 32 Pac. 383, the question whether an agent had exercised the care and diligence toward his principal which the law requires was under consideration, and it was said:

"In the absence of any specific provisions as to the care of agents in ascertaining the responsibility of persons to whom sales were made on credit, they would be held to a careful examination of the credit of a proposed purchaser and to the exercise of reasonable care in ascertaining from the usual sources of information as to his ability to meet payments when they were to be made." (p. 785.)

The supreme court of Illinois had under considera-

tion the duty of a commission merchant in case of a sale made on the Chicago market, and it was held that:

"Where a factor, or commission merchant, makes a sale on 'change for his principal, he will be held to a very high degree of vigilance in learning the pecuniary ability of the purchaser. To protect himself in case of a loss growing out of the insolvency or failure of the purchaser to pay for the goods sold, he must resort to all available sources of information that are accessible, and inattention, or carelessness, in this respect, will render him liable for any loss sustained thereby, but he will not be held as a guarantor of such a sale." (*Foster et al. v. Waller et al.*, 75 Ill. 464, syl. ¶ 1.)

Other authorities on the question are: *Cold Storage Co. v. Produce Co.*, 197 Ill. 457, 64 N. E. 496; *Housel v. Thrall*, 18 Neb. 484, 25 N. W. 612; *Roberts v. Cobb*, 76 Minn. 420, 79 N. W. 540; *Marshall v. Williams*, 2 Biss. 255; *Bonham v. Overton*, 6 La. Ann. 765; 19 Cyc. 130; 2 Clark & Skyles on Agency, § 832.

It appears that sales were made on that market for cash and also upon "street terms," that is, payment upon the following Thursday. On account of the stringency in the money market, it being about the time of the 1907 panic, appellants declined to sell on "street terms," insisting that it must be a cash transaction, which meant payment on the following day. However, when they called for payment the next day the purchasers asked the appellants to wait until Saturday of that week. They did wait, and on Saturday the purchasers were found to be insolvent. It is admitted that appellants were aware of the panicky condition of the market, and yet they did not make any inquiry at the time as to the financial condition of Schotwell-Davis Company and were not even represented at the meeting of the creditors of that firm three days after the sale of the eggs. It seems that appellants had made an examination as to the financial condition of that firm one or two years before this

transaction and the firm had continued to do business and had bought much merchandise on credit on that market. Appellants recognized that there was some danger in the situation. The condition of the market led them to insist on a sale for cash and to refuse to sell on "street terms," the terms on which Schotwell-Davis Company usually purchased. Instead of using every available source of information to ascertain the financial condition of that firm, as the law requires and the condition of the market admonished them to do, they made no inquiry at the time and allowed the eggs to be shipped out of that market to another city. The apprehension which led to a refusal of a sale upon "street terms" should have admonished appellants to diligent inquiry as to the financial responsibility of the purchasers. The jury, therefore, had some basis for the finding that appellants did not use due diligence in the matter.

It is next contended that the court erred in placing the burden of proof upon appellants. No error was committed in that respect. Ordinarily one who alleges negligence takes upon himself the burden of proving it, but when appellants, by their own testimony, proved that there was no inquiry or investigation as to the responsibility of the purchasers when the sale was effected a *prima facie* case of negligence was made out and the burden was then upon appellants to absolve themselves and prove that there was no breach of duty. In 31 Cyc. 1649, it is said:

"Whenever a principal seeks to charge his agent with neglect, or misconduct, in the performance of duties pertaining to the agency, the burden of proving such neglect or misconduct is on the principal; but when a *prima facie* case of negligence has been established it is on the agent to show facts relieving him from liability."

(See, also, *Darling v. Younker,* 37 Ohio St. 487, 41 Am. Rep. 532; *Lahr v. Kraemer,* 91 Minn. 26,

97 N. W. 418; *Brumble v. Brown, ex'r,* 71 N. Car. 513; 10 Encyc. of Ev. 38.)

The instruction with reference to the compromise, even if incorrect, is not material to the result, and it can be said that the other instructions fairly submitted the case to the jury. Finding no prejudicial error in the case, the judgment of the district court will be affirmed.